IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

OLEKSANDR DIDENKO,

        Defendant.

_____

Criminal Action
No 1: 24-261

Washington, DC
February 19, 2026

11:05 a.m.

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Steven B. Wasserman<br>U.S. ATTORNEY'S OFFICE<br>FOR THE DISTRICT OF COLUMBIA<br>555 Fourth Street, NW<br>Washington, DC 20530 |
| For the Defendant: | Christopher Michael Davis<br>DAVIS & DAVIS<br>1350 Connecticut Avenue, NW<br>Suite 202<br>Washington, DC 20036 |
| Court Reporter: | Sherry Lindsay<br>Official Court Reporter<br>U.S. District & Bankruptcy Courts<br>333 Constitution Avenue, NW<br>Room 6710<br>Washington, DC 20001 |

P R O C E E D I N G S

(Interpreter placed under oath.)

(Pause.)

THE COURTROOM DEPUTY:  Criminal case number 24-261, *United States of America versus Oleksandr Didenko*.

Would counsel please approach the podium, state their name for the record, starting with government counsel.

MR. WASSERMAN:  Good morning, Your Honor.  Steven Wasserman on behalf of the United States.

THE COURT:  Good morning.

MR. DAVIS:  Good morning, Your Honor.  Christopher Davis on behalf of Mr. Didenko.

THE COURT:  All right.  Good morning to both of you.

Has the interpreter been sworn?

THE COURTROOM DEPUTY:  Yes, Your Honor.  The interpreter has been sworn.

THE COURT:  I want to make sure that Mr. Didenko's earphones are working.

THE DEFENDANT:  It is very low.

(Pause.)

THE COURT:  All right.  Mr. Didenko, can you hear and understand the translation?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  If you have any difficulty at any time, just raise your hand and we'll address it.  Okay?

THE DEFENDANT:  Okay.

THE COURT:  Okay.  Thank you.

So we are here this morning for the sentencing of the defendant, Oleksandr Didenko, who has pled guilty to two counts.  Count 1, conspiracy to commit wire fraud in violation of 18 U.S.C. sections 1343 and 1349; and Count 2, aggravated identity theft in violation of 18 U.S.C. section 1028(a)(1).  I have received and reviewed the presentence investigation report from the Probation Office, the sentencing recommendation from the Probation Office, the government's sentencing memorandum along with a victim impact statement, which is in the form of an email.  I have also considered Mr. Didenko's sentencing memorandum with the attached exhibits, which include a letter from Sheriff Deputy Wilson, Sheriff Deputy Sterns, Mr. Didenko's letter to the Court and a letter submitted by his friend Mr. Lymar.

Are there any other materials that the government would request that I consider today, Mr. Wasserman?

MR. WASSERMAN:  No, Your Honor.  I'll just add, I did submit as part of my request at sentencing an order of restitution.  I don't know whether the Court would typically want backup documents to support that request.  I have reviewed the records that I was provided, which would seem to support the restitution.

THE COURT:  So let's see if Mr. Davis contests the

amount of the restitution.  If he does, then I may need some backup, but my recollection is that I can do that even after imposing sentence.  So if we need to do it, we can follow up with that.

MR. WASSERMAN:  Yeah, correct.

THE COURT:  Mr. Davis, are there other materials the defense would request that I consider today?

MR. DAVIS:  None, Your Honor.

THE COURT:  Okay.  Thank you.

All right.  So, Mr. Didenko, today's proceeding is going to go through a number of steps.  I'm sure you're anxious just to get to the bottom line, but I have to go through these steps because I have to make sure that we have agreement about the relevant law, the facts, and the guidelines calculation. And if there is any disagreement then I need to resolve that disagreement before I can impose sentence.  So the first step will be for me to determine whether you have reviewed the presentence report and whether there are any outstanding objections to that that need to be resolved.  And I then need to determine the proper guidelines calculation in your case and whether there are any mitigating or aggravating factors that would warrant a departure.

The third step is for me to hear from the government, from your counsel, from you, from anyone else you would like me to hear from.  And then the final step is for me to fashion a

just and fair sentence in the light of the factors that congress has specified in the governing statute.  And also as part of the last step, I will actually impose the sentence.

So let's start with the final presentence report and the recommendation from the Probation Office, which were filed with the Court on February 10th, 2026.

And let me start by asking Mr. Wasserman, are there any objections to any of the factual matters set forth in the presentence report?

MR. WASSERMAN:  No, Your Honor.

THE COURT:  Mr. Davis, do you have any objections to any of the factual matters set forth in the presentence report?

MR. DAVIS:  No, Your Honor.

THE COURT:  Mr. Didenko, are you fully satisfied with the assistance of your lawyer in this case?

THE DEFENDANT:  Yes, totally.

THE COURT:  And have you had enough time to review the presentence report and to talk with Mr. Davis about that document?

THE DEFENDANT:  Yes, of course.

THE COURT:  Have you also had a chance to review the some government's sentencing memorandum and to talk to Mr. Davis about that?

THE DEFENDANT:  Yes, of course.

THE COURT:  Okay.  I will then accept the facts as

set forth in the final presentence report as my findings of fact for purposes of today's sentencing.

That brings us to the relevant statutory provisions and the sentencing guidelines.  Starting with the statutes, Count 1 which charges Mr. Didenko with conspiracy to commit wire fraud in violation of 18 U.S.C. sections 1343 and 1349, carries with it a maximum sentence of 20 years imprisonment. And Count 4 -- I think I said Count 2 earlier, but it's Count 4, which Mr. Didenko has pled guilty to of aggravated identity theft in violation of 18 U.S.C. 1028(a)(1) requires the Court to impose a mandatory two-year sentence of imprisonment that has to be consecutive to any other sentence or term of imprisonment the Court imposes.

With respect to the guidelines as to Count 4, the guidelines provide that -- a guideline level of 2 years and that's because the guidelines simply don't apply to that count because it's a mandatory two-year sentence.

With respect to Count 1, the Probation Office has indicated that the base offense level is 7 under 2B1.1A1 because the offense involved fraud and deceit, has a statutory maximum term of imprisonment of 20 years.  The Probation Office has also recommended a 14-level increase because the gain that resulted from Mr. Didenko's participation in the offense was $1,420,185.64, which is more than $550,000 but less than 1.5 million.  The Probation Office also recommends a 2-level

increase because the offense involved 10 or more victims and a 2-level increase because a substantial part of the fraudulent scheme was committed outside the United States.  And the offense involved otherwise -- I mean, the offense otherwise involved sophisticated means.  The defendant intentionally engaged in and caused the conduct consisting of a sophisticated means.  The Probation Office also recommends a 2-level increase because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification.

And I actually don't think that that enhancement applies here, because the underlying offense for the conspiracy was aggravated identity theft in violation of 1028(a)(1).  And the guidelines provide that when a sentence for aggravated identity theft is imposed in conjunction with a sentence for an underlying offense, the specific offense characteristic for the unauthorized transfer or use of any means of identification should not be applied when determining the offense level.  And that's section 2B1.6, comment 2 of the guidelines.  And so my inclination is not to apply that 2-level increase.  But let me pause there for a minute and let you both or all look at the guidelines and just confirm that you agree with me that the 2-level enhancement doesn't apply.  I believe that the Probation Office agrees that it does not apply.  But I'll let her speak for herself if she has a different view.

(Pause.)

MR. WASSERMAN:  I'm sorry, Your Honor.

THE COURT:  I am just pausing to give you a chance to object to see if you disagree with me.

It's 2B1.6, comment 2.

(Pause.)

MR. WASSERMAN:  Your Honor, I see what the Court was referring to under B1.6.  I think where, you know, our confusion may have occurred is looking at the 2B1.1.  You know, there is no -- there is no reference in the comments about not applying that provision, you know, in the event that, you know, the 1028 charge is also an offense of conviction.  So I do see the B1.6 and what the Court is referring to.  And I don't know that I disagree with the Court's assessment.  Let me just take one more look here.

THE COURT:  I'm certainly not criticizing anybody for having missed it.  I think the defense missed it as well.

MR. WASSERMAN:  No.

MR. DAVIS:  I did.  Although I considered it for other reasons, I was questioning whether it applied, but I did not see that.

Just so the record is clear, I don't object to it.

THE COURT:  I would have assumed as much.

MR. WASSERMAN:  I don't see a basis for me to object in light of this.

THE COURT:  I do think that probation concurs as well.

MR. WASSERMAN:  Yeah.  Okay.  Thank you.

THE COURT:  All right.  Thank you.

All right.  And then the Probation Office does recommend a 2-level increase because the offense involved the unauthorized public dissemination of personal information.  I think everyone agrees that there should be a 2-level enhancement because the defendant was an organizer, leader supervisor or manager.  And also that Mr. Didenko is entitled to the 2-level reduction under 3E1.1A and the 1-level reduction under 3E1.1B.

He is not entitled to the zero-point offender adjustment because he received the aggravating role adjustment. So that would lead to a total offense level of 26 with no criminal history points.  And so the guidelines would then recommend a sentence of between 63 and 78 months with respect to the conspiracy count.  And then an additional 2 years, which has to be consecutive for purposes of the aggravated identity theft count.

Any disagreements, clarifications, amendments to any of that, Mr. Wasserman?

MR. WASSERMAN:  No, Your Honor.

THE COURT:  Mr. Davis?

MR. DAVIS:  No, Your Honor.

THE COURT:  So in addition, Count 1, the conspiracy count, permits the Court to impose a term of not more than three years of supervised release.  And the guidelines recommend a period of supervised release of not more than three years.  And for Count 4, the Court may impose a term of supervised release of not more than one year.  And the guidelines recommend a term of supervised release of not more than one year.  For Count 1, the defendant is ineligible for probation, because the defendant will be sentenced at the same time for a term of imprisonment for the same or a different offense.  And that's 5B1.1B3 of the guidelines.

And then the defendant is ineligible for probation for Count 4 because of the mandatory sentence that is required there.

For Counts 1 and 4, the maximum fine for each is $250,000.  And the guidelines recommend a fine of between 25,000 and $250,000.  And the Court is required to impose a special assessment of $100 for each count.

Anything to amend, object to, clarify as to any of that, Mr. Wasserman?

MR. WASSERMAN:  The Court's indulgence.  I just want to make sure that the -- did you indicate the guideline range for the fine?

THE COURT:  Yeah, it was $25,000 to $250,000.  That may be based on the fact that I calculated the guidelines a

little different.  Let's see.

MS. FIELD:  Thank you, Your Honor.  Hana Field for probation.  It is still 25,000 to 250,000.

MR. WASSERMAN:  Thank you.  Appreciate that.

THE COURT:  Okay.  Thank you.

Mr. Davis, anything to correct or amend?

MR. DAVIS:  Nothing.

THE COURT:  Okay.  Then pursuant to 18 U.S.C. section 3663(a), the Court -- there is mandatory restitution in the case.  My understanding is that there are numerous victims here.  One victim I think has come forward and actually sought restitution.  And I think there is a bit of discrepancy.  The government I think on one page in its sentencing memorandum indicates that it's seeking restitution in the amount of $45,687.72.  That's page 1.  And then on page 13, it says $46,547.28.

MR. WASSERMAN:  It should be the 46,000-dollar figure, Your Honor.

THE COURT:  They are both -- so there is 46,547.

MR. WASSERMAN:  It should be the one that is at the -- in the request for restitution paragraph and then in the conclusion, 46,547.28.

THE COURT:  Okay.  And, Mr. Davis, does the defense have any objection to the Court ordering that amount of restitution to the one company?

MR. DAVIS:  I do not, Your Honor.  I believe that the usual practice, at least what I have seen over the years is that they merge the forfeiture counts with the restitution. DOJ --

THE COURT REPORTER:  Sir, please use the microphone.

MR. DAVIS:  I'm sorry.

I don't -- my experience has been the DOJ normally merges the forfeiture count with the restitution in any event, so it all washes out in the end.

THE COURT:  Although I think I should be clear, Mr. Wasserman probably would chime in on this as well.  But my understanding is that is in the discretion of the Department of Justice.  And the Department of Justice's view as a matter of law, it's entitled to collect both.  And that it might in practice not do so, but it would have an entitlement to do so.

MR. DAVIS:  That's true.

MR. WASSERMAN:  I think that's accurate, Your Honor.

THE COURT:  And then if there is no objection to the amount, then I don't think we need further documentation with respect to the amount and I can accept the recommendations from the government.

Will you provide me then with the name of the company?  Do you want to do that separately with the deputy clerk when we are finished here, so that I can sign an order specifying where the money goes?

MR. WASSERMAN:  Yes.

THE COURT:  Any objection to handling it that way, Mr. Davis?

MR. DAVIS:  No, Your Honor.

THE COURT:  And then, Mr. Wasserman, has the government notified any other victim that they have been able to identify?

MR. WASSERMAN:  Yes, Your Honor.  We had provided notice to all victims that we have identified through the victim identification or victim notification system.  And this is the only request for restitution that we received.  And the victim impact statement that I submitted is the only one that we submitted.

THE COURT:  Okay.  Thank you.

And then the parties have agreed that the Court should enter a forfeiture judgment, money judgment in the amount of $1,420,185.64.  And, Mr. Wasserman, I want to make sure I understand how this is working, because I take it that the government has seized various accounts of Mr. Didenko.  And based on my review of the plea agreement, it appears to me that what's happening here is that there were certain cash accounts that the government has seized and the total value of those cash accounts is 72,987.64.

MR. WASSERMAN:  Yes.

THE COURT:  And that there are certain cryptocurrency

accounts that have not yet been liquidated or have they been liquidated at this point?

MR. WASSERMAN:  I'm sorry.

THE COURT:  Have those been liquidated yet?

MR. WASSERMAN:  I don't -- I'm not 100 percent sure whether they have been liquidated yet.

THE COURT:  I take it the way it's going to work is that the government will give a credit to Mr. Didenko against the forfeiture amount for the seized accounts which are listed on pages 9 and 10 of the plea agreement.

MR. WASSERMAN:  That's correct.

THE COURT:  Which includes cash of almost $73,000 and then whatever the liquidated values of the cryptocurrency accounts.

MR. WASSERMAN:  Yes, that's correct.

THE COURT:  Mr. Davis, are you in agreement with that?

MR. DAVIS:  That is my understanding as well.

THE COURT:  That is fine to proceed that way as well then.  So I will order the money judgment in the amount of -- the money forfeiture $1,420,185.64 and but with credit for the amounts listed on pages 9 and 10 of the plea agreement.

Then I take it that neither party is seeking -- well, I take that back.  I think the defense is seeking a departure, but a Smith departure only.  And based on the fact that

Mr. Didenko has stipulated to his removal from the country. And as a result of his immigration status and removal that he will not be entitled to the usual benefit of being relocated to a halfway house or other transitional circumstances.  But other than seeking the Smith departure, is anyone seeking a departure in this case, distinct from a variance?

MR. DAVIS:  A variance, Your Honor.  I am seeking a variance for other reasons.

THE COURT:  Yeah.  But, no, I am just talking about departure for the moment.

MR. DAVIS:  No, I'm not seeking a departure for any other reason.

THE COURT:  All right.  And, Mr. Wasserman, what is your view with respect to the Smith departure?

MR. WASSERMAN:  Your Honor, the government typically takes no position on the Smith departure request.

THE COURT:  Yeah.  Okay.  I do think given the fact that Mr. Didenko will not only be promptly removed, but promptly removed to a country that at least as of today is a war-torn country, I do think it's appropriate to give him the Smith departure.  So I will provide a 6-month departure pursuant to *Smith*, which I typically do in cases like this one.

MR. WASSERMAN:  I understand.

THE COURT:  Okay.  Thank you.

All right.  Then the Probation Office recommended

that the Court impose a sentence of -- total of 90 months of imprisonment, which was consisting of 66 months on Count 1, as well as the 24 consecutive months for Count 4.  That was based on the calculation -- the guidelines were two levels higher than they are.

I don't know, Ms. Field, if you wanted to say anything in light of -- you may not have had time to consult with anyone else in your office about this question, but I don't know if that affects what your recommendation is.

MS. FIELD:  Thank you, Your Honor.  We would still recommend a 12-month downward variance based on the Smith departure.  So our recommendation would be 75 months incarceration.

THE COURT:  Okay.  That was -- you're recommending 12 months under *Smith* instead of the 6 months?

MS. FIELD:  Yes.

THE COURT:  I see.  What is it in your experience the Smith departure -- what is the usual?  In the past I have done 6 months, but is it usual for other judges to do the 12 months or your office to recommend 12 for the Smith departure?

MS. FIELD:  Typically, we would recommend 12.

THE COURT:  Okay.

MS. FIELD:  I have seen anywhere between 6 and 12 ordered by the court.

THE COURT:  All right.  Anything further with respect

to whether I ought to use the 12 instead of the 6 on that question?

MR. WASSERMAN:  Your Honor, I have at least, in my experience, typically seen 6 months.  And that's usually because of the inability to send an individual in his status to a halfway house, which typically occurs approximately 6 months before their term of imprisonment ends.

THE COURT:  But can't it be up to 12 months?  That's my recollection.

MR. WASSERMAN:  I believe that's correct.

THE COURT:  Okay.

MR. WASSERMAN:  I have not seen a 12-month departure -- Smith departure.  And I don't believe one is warranted here.  I believe a 6-month departure is the appropriate --

THE COURT:  Let me do this.  Let me for present purposes simply provide that I am going to include a Smith departure.  And then when we talk about sentencing more generally and whether there are variances warranted in this case, I can then decide whether to do 6 or 12 months at that point in time.

And then the Probation Office is also recommending no fine, that the Court order restitution as it has, as well as special assessment of $200.  And that's all based on the information set forth in the presentence report.

I'm now required to consider the relevant factors that congress has set forth in 18 U.S.C. 3553(a).  And I have to ensure that I impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing.  And those purposes include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense.  The sentence should also afford adequate deterrence to criminal conduct, protect the public from future crimes of the defendant and promote rehabilitation.

In addition to the guidelines and policy statements, I need to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the guidelines range, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct and the types of sentences available.

In addition, with respect to a term of supervised release, I need to conduct an individualized assessment on that.  And I am interested in hearing what the parties think about supervised release, given the fact that the Court will also require Mr. Didenko's removal from the United States but we can take that up.

The government is -- or was seeking a sentence of 102 months based on the old calculation of the guidelines, with 78

months on Count 1, which was the low end of the guidelines, plus 24 months on Count 4, which is mandatory.  And then 36 months of supervised release.

And then the forfeiture judgment in the amount of $1.42 million and an order of restitution.  And Mr. Didenko hasn't specified an appropriate sentence, but has just said that he would seek a sentence below the guidelines range.

Mr. Wasserman, would the government like to be heard with respect to the sentencing criteria?

MR. WASSERMAN:  Yes, Your Honor.  Thank you.

So I would just address or highlight some points from the sentencing memorandum.  The government is recommending a sentence of 87 months, which adjusts obviously for the 2-level enhancement that was incorrectly imposed.  And the plea provides that we would recommend the low end of the applicable guideline range, which at the low end would be 87 months; 63 months on Count 1, and 24 months consecutive on Count 4.

THE COURT:  Right.

MR. WASSERMAN:  And I want to first highlight obviously, the impact of the offense and specifically the involvement of North Korea.  And I don't want to -- I don't need to go into detail about all of the sort of parade of horribles that North Korea represents, not just to the United States national security but to world security.

THE COURT:  And Ukraine in particular.

MR. WASSERMAN:  Yeah.  Yeah.  And --

THE COURT:  As particularly relevant here.

MR. WASSERMAN:  The North Koreans -- it is essentially a criminal organization that runs that country. And they maintain --

THE COURT:  You didn't have to convince me at all of the threat to world security imposed by North Korea.

MR. WASSERMAN:  Yeah.

THE COURT:  The question I have is when Mr. Didenko realized, because you take a little bit different position than I think that he does.  You in your sentencing memorandum note a conversation that occurred in 2023, I think is my recollection, where he says, he had found out that -- the prior year that North Korea was involved and was very surprised to learn that. He in his letter to the Court I think says that he didn't realize that North Korea was involved until he was told that by South Korean officials in 2024.  So that is a question of interest to me.

MR. WASSERMAN:  Yeah.  And I think, you know, our position is that based upon the communication that he had significantly prior to, you know, his visit to South Korea, you know, it establishes that he was aware that his customers were North Korean.  He has also indicated to us that, you know, as early as 2020 or 2021, one of his customers, who was Russian, advised that people he was dealing with were not Chinese but,

in fact, North Korean.  So I think from our position, he certainly knew by 2022, based on the communications, Skype chat that I provided in the sentencing memo, that his business was -- you know, his customers were North Korean.

Whether he chose to sort of ignore that or hope that it wasn't true, you know, only Mr. Didenko knows that.  But the evidence strongly indicates that he knew that his customers were North Korean.  I think most prudent individuals would have ceased the operation or the illegal activity, which obviously he should have done anyway, because they were involving stolen identities and people that he knew were not authorized to work in the United States, which is bad enough.  And yet he chose to continue on because, you know, he was making money off of it.

So in terms of his culpability and his knowledge, it's, I believe, significant.

THE COURT:  Did he at some point reach out to the FBI himself before he was approached by the FBI?

MR. WASSERMAN:  He did.

THE COURT:  So what happened?

MR. WASSERMAN:  He sent an email to an FBI website in which he claimed to have knowledge about North Koreans engaging in, you know, this type of scheme.  And that was after he had met with South Korean officials.

THE COURT:  What prompted the meeting with South Korean officials?  How did that come out?

MR. WASSERMAN:  They were aware that he was traveling to -- as I understand it, they were aware that he was traveling to South Korea and approached him.

THE COURT:  Was he just in South Korea for a personal visit?

MR. WASSERMAN:  I believe it was a personal trip, yeah.

THE COURT:  And then they approached him there and said, we know that this is going on and confronted him with that?

MR. WASSERMAN:  Correct.

THE COURT:  And then he contacted the FBI at that point?

MR. WASSERMAN:  Sometime after that.  Again, you know, I don't know what the motivations were for his contacting the FBI.

THE COURT:  Is that what then prompted the FBI to start looking into the matter?

MR. WASSERMAN:  No.  The FBI -- law enforcement here in the United States was aware of and investigating Mr. Didenko well before that complaint came in.

THE COURT:  Okay.  I see.

When he contacted the FBI, did he identify himself in the process of doing so and offer assistance?

MR. WASSERMAN:  He I believe did offer assistance.  I

don't have the -- I would have to dig it up.  I don't know whether I actually have the communication.  And I don't believe he identified himself.  But, again, with respect to what his motives were at that point, given that South Koreans knew that he was involved in this scheme and believe he realized that US law enforcement was likely aware of what he was doing, and, you know, in an attempt to perhaps mitigate any potential criminal liability he might have, what his motives were.

THE COURT:  Did he continue the scheme after that?

MR. WASSERMAN:  Yes.  I mean, we -- they were still running the laptop farms in May of 2024, which occurred after he -- which was after he met with the South Koreans and after he contacted the FBI.

THE COURT:  When did he contact the FBI?

MR. WASSERMAN:  I think it was January --

THE COURT:  January.  Okay.

MR. WASSERMAN:  -- of 2024.

THE COURT:  So he continued until May and that was when he was arrested in Poland?

MR. WASSERMAN:  Correct.

THE COURT:  That was just on an Interpol --

MR. WASSERMAN:  Yes.  That was our warrant.

THE COURT:  -- warrant?

MR. WASSERMAN:  Yes.

THE COURT:  Can you tell me also a little bit about

what his relationship was with Ms. Chapman as well as the computer farms or the laptop farms here in the United States?

MR. WASSERMAN:  Yeah.  So his relationship as I understand it with Ms. Chapman was really via one of his customers who wanted -- was not happy with one of the laptop farms that he was operating and asked to have the laptops sent to Ms. Chapman.

THE COURT:  That was Piety?

MR. WASSERMAN:  Yes, correct.

So there was not a direct interaction between the defendant and Mr. Chapman.

THE COURT:  Ms. Chapman.

MR. WASSERMAN:  The defendant and Ms. Chapman.

THE COURT:  So there were other laptop farms that Mr. Didenko was working with?

MR. WASSERMAN:  He operated laptop farms in Virginia, Tennessee, California.  And obviously was using -- one of his customers used the laptop farm in Arizona.

THE COURT:  What did he do to create the laptop farms?  Did he create them himself?  Did he contact people and offer them money to do this?

MR. WASSERMAN:  Yes.  He had contacts in the United States, mostly Ukrainian nationals that were here in the United States that he contacted and asked them to do this and was paying them $100 per laptop per month to run these laptop

farms.

THE COURT:  So the laptop farms were run by these Ukrainian nationals he knew in the United States and he contacted them and said, go buy a laptop?

MR. WASSERMAN:  Well, not go buy a laptop.  They would have the laptops mailed to them from, you know, via his customer that got the laptops from the US businesses --

THE COURT:  I see.

MR. WASSERMAN:  -- that they were getting employment from.  They would then mail those to the address that Didenko provided them, the address in the United States with instructions on how to operate them.

THE COURT:  I see.  So they were the company's laptops that went to someone to actually operate them in the United States so that --

MR. WASSERMAN:  Correct.

THE COURT:  -- the US company would see them operating in the United States?

MR. WASSERMAN:  Correct.

THE COURT:  Okay.  And then they would presumably then be linked to computers around the world or in other parts of the world where the customers were then by use somehow of Mr. Didenko's website or systems would then be able to access the computers in Virginia and elsewhere to appears as though they were working in the United States?

MR. WASSERMAN:  Yes.  They were able to access the laptops that were located in the United States and essentially to perform the work that they had been hired for.  So Mr. Didenko essentially provided those laptop farms for his customers.  Mr. Didenko's services really consisted of giving -- facilitating his customers' access to freelancer platforms so that they could submit resumes.  He had people that would help them do interviews to get the jobs.  He provided them money service transmitter accounts so that they could receive and make payments.  It was essentially a one-stop shop for facilitating these fraudulent IT workers.

THE COURT:  This may be in the papers or in the statement of offense, but can you remind me of how many people were working for Mr. Didenko?

MR. WASSERMAN:  So Mr. Didenko had three people in -- three or four people actually in the United States.  There were two people in Tennessee, one person in Virginia and one person in California that were operating the laptop farms.  And then he had several individuals that worked for him in Ukraine, which kind of brings me to my -- one point I did want to address was there -- one of the letters in support of Mr. Didenko was from Mr. Lymar.

THE COURT:  Yeah.

MR. WASSERMAN:  And Mr. Lymar was a co-conspirator of the defendant.  I don't know the extent of his knowledge about

North Korea, the involvement in North Korea.  But Mr. Lymar created Upwork accounts that he knew were going to be used by other people.  He was well aware of the nature of the business that Mr. Didenko was running and was helping him run it.  So to the extent that Mr. Lymar is serving as a sort of character reference, I'm not sure that he is in the best position to serve that function.

But in terms of the co-conspirators, the people that he was operating the business with and supervising, there were at least six or seven people.

THE COURT:  Okay.

MR. WASSERMAN:  I want to just address -- obviously 40 companies defrauded, 18 US persons whose identities were stolen.  You have got the one victim impact statement of what that type of crime, that impact has on people, not just the hassle of having to deal with that, but the real financial and emotional impacts that having your identity stolen can have.  I mean, in the instance of this particular victim who had, you know, mental problems and needed food assistance, it really significantly impacted her.  And obviously the hundreds and thousands of dollars in wages paid.  And I won't belabor obviously the benefit to North Korea that these types of scams have.

He -- you know, in contrasting his role in this offense to Ms. Chapman, who I believe Your Honor gave 102

months to --

THE COURT:  Although my recollection that was a (c)(1)(C) plea.

MR. WASSERMAN:  That's correct.

THE COURT:  So my discretion was somewhat limited in that case.

MR. WASSERMAN:  Yes.  I don't remember the range.  I know the government's recommendation was 111 months.  I think Your Honor gave 102, but I don't recall what the minimum was in that.

THE COURT:  Yeah.  I'm not suggesting it's not relevant.

MR. WASSERMAN:  No.  No.

So with respect to Mr. Didenko, I think in some ways he is more culpable given that he was -- had a much deeper involvement in the operation of the business that allowed this to occur.

And as I understand Ms. Chapman's role, she was running a laptop farm.  Certainly a significant role in the offense to which he pled, but really wasn't running the whole thing like Mr. Didenko was and the fact that he is located overseas.  So I think, you know, his culpability here is more significant.

THE COURT:  Yeah, although I guess, I am interested in your reaction.  I see it as sort of a multifactor analysis,

where they weigh in different directions.  To the extent that Ms. Chapman was a US citizen who was aiding North Korea, that raises I think unique concerns for a US Federal Court than to have a US citizen engaged in conduct like that.  And she -- my recollection is that it was over 300 companies that she was defrauding and 68 people whose identities were stolen.

MR. WASSERMAN:  Yeah.

THE COURT:  And that you were actually able to trace a very substantial amount of money that went to North Korea in that case.  And that all weighs in favor of increased responsibility in her case.

On the other hand, she was I think a very comparatively far less sophisticated human being or person than --

MR. WASSERMAN:  Correct.

THE COURT:  -- than Mr. Didenko and her scheme in what she was doing was far less sophisticated than what he was doing.

MR. WASSERMAN:  And what I would say, you know, to counter that a little bit is that while obviously Mr. Didenko isn't a US citizen and does not have loyalties to the United States that a US citizen should have, I think it's incumbent on, you know, the courts here, because somebody in his position represents in some ways a more significant threat because he is located overseas and much less likely to come within the

jurisdiction of the United States.  So the message that I think the Court needs to be sending to would-be offenders outside of the United States is that there is going to be a significant price to pay if we catch you and you're brought to the United States.

THE COURT:  You think people -- and this really is a question.  I don't mean it rhetorically at all.  But do you think people in Eastern Europe who might be tempted to set something up like this would be aware of the sentence that I am going to impose in this case?

MR. WASSERMAN:  I don't know.  I mean, we seized the website in this case.  And certainly press releases go out on these cases.  And I don't know what other efforts that, you know, occur by the FBI to, you know, communicate these things internationally.  But to the extent that we do want to demonstrate that we are serious about these types of offenses, I do think there is a responsibility on the Court to impose a sentence that provides deterrence.  You know, obviously most people probably think or may think that, you know, they'll never get caught.

THE COURT:  Right.

MR. WASSERMAN:  Even if we find out, that we are not going to be able to bring them here.  But I do think that, you know, to the extent that it gives people pause that perhaps this might not be the type of scheme they want to engage in, I

do think it's important that the Court sends that message.

So I did want to, you know, make that point.  I'm happy to answer any other questions that the Court has.  I believe that the 87 months -- I understand the Court's going to give the 6 month or at least the 6-month Smith departure.

THE COURT:  Right.

MR. WASSERMAN:  Ask the Court to impose the forfeiture order, which Your Honor has already indicated you intend to do and the restitution in the amount of $46,547.28.

With respect to the supervised release --

THE COURT:  Oh, yes.

MR. WASSERMAN:  I mean, I believe that it makes sense to impose it, because at the end of the day, I don't know whether -- although it's highly unlikely that Mr. Didenko would end up staying in the United States or would end up coming back to the United States, I think should that happen, he would be at least subject to supervised release when he is in the country.  So I think it makes sense to impose it, even though it's not likely to be --

THE COURT:  Okay.  Fair enough.

All right.  Mr. Davis.

MR. DAVIS:  That's a lot to process.  Your Honor had a lot of questions that I wasn't going to address, but I can address and I will address.

There are many moving parts to this case, many moving

parts. Mr. Didenko sets up a website, something happens. That person is given an identity. Something happens in the United States. I think one of the biggest distinguishing factors between him and Ms. Chapman are that Ms. Chapman knew what happened in the United States. She knew what agencies were affected. She actually communicated with the people, the North Koreans who she knew were North Koreans telling them she could go to jail for this activity.

THE COURT: But Mr. Didenko must have known, for example, that if he was appropriating the identity of US individuals and then it appeared that they were working for companies they weren't working for, that was going to result in potential tax liability and other messes for those individuals at least, and at least with whatever filings were required with the US government, those would be false; right?

MR. DAVIS: I agree with that. But the question becomes how aware he was and how much attention did he pay to it? Whereas Ms. Chapman was aware. And she did point it out. And I also know her guideline range was 210 months to 262 months. So she received a substantial break when she entered a plea of guilty. And there is no question she knew he was dealing with North Koreans all along.

THE COURT: Do you want to answer that question for me? Because there is a discrepancy between what the government says and what Mr. Didenko says about when he was aware.

MR. DAVIS:  There is a snippet of a communication between Mr. Didenko and one of his customers where they reference or someone says something that would indicate that they are North Koreans, but Mr. Didenko -- and he can probably explain it better than I can.  He really didn't settle in on that.  He did not really -- the fact did not come home until he was in Seoul.  And as he describes it, the South Korean FBI approached him and told him that he was dealing with North Koreans.  And they actually sought to enlist him, gave him $10,000 and took him out to a Michelin-rated restaurant.  They wanted him to work for them.

THE COURT:  So but I just want to make sure I am understanding what you are saying.  Because I am understanding you to be saying, but tell me if this is not right, is that he was actually aware as early as perhaps 2022 that there were some North Koreans who were using his services, but it just didn't hit him how serious that was.  And that was a major problem until he was confronted by the South Korean officials.

MR. DAVIS:  He didn't focus on it.

THE COURT:  But he focused on --

MR. DAVIS:  They weren't extended conversations.  We are talking a snippet.

THE COURT:  I know.  The question though is, was he aware?  And it's hard to say he wasn't aware where he in a communication says, I was surprised to learn that North Koreans

were involved.

MR. DAVIS:  Well, actually as -- I have the note that went to the FBI.  And it does have his name.  It does have his phone number and it does have the email address for him, which is one of the email addresses that was in his case.  And it reads:  "Actually I don't know where to write properly.  I just want to help you find criminals I work with and provide services to."  This was after he met with the South Koreans when he wrote this.  "Not so long ago I didn't know I was doing bad things.  But at the moment, I just can't sleep well.  This is about North Korean programmers.  I would like to be useful. I work alongside people who are willing to sell their accounts for small amounts of money.  And North Korea IT specialists are willing to pay a lot of money for it.  I think they are from North Korea, but I'm not 100 percent sure.  I have their contacts.  I am just an intermediary.  I have information I hope you might find useful.  I read this official article and a lot became clearer to me.  They call me a traitor because I help them make money."

You know, it's just as detailed --

THE COURT:  When did the war in Ukraine start?

MR. DAVIS:  Actually in 2010 when Russia started banging around in --

THE COURT:  I'm not talking about Crimea.  I'm actually talking when was the invasion -- Russian invasion

of --

MR. WASSERMAN:  February 2022, Your Honor.

THE COURT:  Because the reason I'm asking that is because I can imagine a world in which he gets involved in this before then.  And it's only -- and he knows at some level that North Koreans are involved.  And it's only later that he realizes, oh, my goodness, I'm actually supporting people who are then aiding the Russian government in attacking my country.  And I don't know when it became public that North Korea was actually supplying support to Russia in the war or not.  But, you know, I can see that -- I'm just trying to make sense of the sequence of events.  And I can see how a person could wake up one day and say, oh, my goodness, this is horrible.  This speaks to his good portion of his character that he would be distraught about the fact he is helping people who are attacking his country, but it may be that is what he was reacting to.

MR. DAVIS:  I would agree with Your Honor.  I think Mr. Didenko -- he wrote one of the more heartfelt letters that I have seen to a judge --

THE COURT:  He did.

MR. DAVIS:  -- when he comes into court.  One could question, given his cognitive abilities, maybe he is pulling -- trying to pull the wool over someone's eyes.  But that isn't the case, because that is what everyone says about him.  All of

the letters from the deputies out there, I didn't even solicit them.  They just came.  Mr. Didenko told him about his friend who had worked with him a little bit in this case when the Mr. Didenko met with the FBI here.

I guess if Your Honor wants me to go through what I have to say about allocution on his behalf at this point --

THE COURT:  I want to hear anything you have to say. I'm all ears.

MR. DAVIS:  I mean, it's in my memo.  I am not going to beat a dead horse, but I mean this offense really does not define this man.  It's just so out of character it isn't funny. And it's sad.  And he is tortured over this for many reasons, focusing on -- zeroing in on Your Honor's comments about how upset he was when he realized the impact on his country and the United States, which was assisting Ukraine.

He has no status in the US.  He is not coming back. I don't think we need -- actually I think the guidelines indicate that he is going to be deported.  We don't need to impose supervised release.  He has never been here before.  He was brought here.  He was arrested in Poland.  He spent 8 months in a Polish jail, largely due to a miscommunication with his lawyer, who he saw maybe once when he was locked up over there.  It was horrible conditions.  He barely ate.  He was skin and bones when he arrived here.  I would think that would warrant some type of consideration at sentencing.

With respect to the deportable alien status.  He is not only deprived of the 12 months at the end of his sentence. If he is sentenced to imprisonment, he is going to be deprived of programs.  He is going to be deprived of earned-time credit since Your Honor is --

THE COURT:  He still gets the --

MR. DAVIS:  Good time.

THE COURT:  Good time, yes.

MR. DAVIS:  He does.  And actually on that, just to put everything into context, 87 months is 7.25 years.  If he received a 12-month Smith departure, he would be down to 75 months, which is 6.25.  He has spent 2 years in jail, that brings him down to 4.25.  And the good time credit on that sentence of 7.25 yeas is a year that would bring him town to 3.25 years.  That's if Your Honor didn't consider any other arguments for variance beyond the Smith departure.

Again, I can't -- I just can't hammer home how strongly I feel that this offense does not describe this man. And I understand the implications of what he has done.  And he understands them now.  But it just does not define him.

His mother is over in Ukraine.  She thinks he is working for the government.  He was educated by the Ukraine government.  He didn't pay for college or graduate school. They educated him.

And he supported his mom throughout the process.  And

they -- you know, although he hasn't said it, I suspect that may have been where the side business came in.

She is on her own.  She is elderly.  She has arthritis.

THE COURT:  Is she elderly?  I thought she was 51 or 52.

MR. DAVIS:  She is, but it's -- she is living a hard life.

THE COURT:  I don't doubt that, but --

MR. DAVIS:  She has arthritis.  She had a surgery -- a fairly serious surgery not too long ago.  And I -- you know, I put it in my memo.  We all know what the conditions in Ukraine are.  It's 15 below zero and they don't have heat. It's ludicrous.  His friend lives in Kiev.  I mean there are bombings daily.  It's just ridiculous what's going on over there.  His mother needs him.  And he believes he has useful skills and he would like to -- he thinks he can get into the military.  I do not doubt they won't take him.  He is highly technical.  We are sending all kind of high tech weaponry over there.  He would be an asset to the military.  That's what he wants to do.  He wants to give back.  He wants to try to do something to make a difference.

And he really wants to be able to help his mother. And he is just -- again, she doesn't know where he is.  Thanks to modern technology with the iPads in the jails, he can

communicate with his mom.  She thinks he is on some type of government project.  Maybe not.  Maybe she just doesn't push it, but she needs him.

So the 8-month time in the Polish jail, his mother, the fact he wants to enter the military, I would ask Your Honor to consider all of these factors and impose a variance.  I know there is a 2-year mandatory minimum.  I think -- and I rarely make a request like this.  I ask Your Honor to sentence him to the mandatory minimum.

He is a unique person.  This is a unique circumstance.  I mean, everything involved in this case is so different than anything else we see normally.

I know we need to send a message to others.  But he has been imprisoned.  His message has been received by him. And I'm certain it's been received by others.

And those would be my requests, Your Honor.  Thank you.

THE COURT:  All right.  Thank you.

Would Mr. Didenko like to address the Court?

MR. DAVIS:  Yes, he would.

THE COURT:  Okay.  Thanks.  I obviously read his letter, but I'd be happy to hear anything else he has to say.

You know, I wonder if it's easier if you just want to come stand beside him, for the interpreter?

THE DEFENDANT:  Thank you so much, Your Honor, for --

Your Honor, thank you so much for the opportunity to talk today. As far as I understand, you have already received my letter in which I opened up to the point to which my heart allowed, the letter in which I did not lie, where I didn't play with my words, where I didn't exaggerate or lessen. I was just simply open. I was honest to myself. The letter in which I wanted to show that I understand why I am here and I understand the responsibility which is upon me.

I don't need to keep repeating and take away your time. Today, I just want in the presence of everybody, here in this courtroom, to express my deep gratitude to my attorney, Mr. Davis.

This person was very kind to me throughout all of this time. And he provided me with the support that was so needed.

Mr. Davis, you are a true professional. I will remember about you and I will remember what you have done for me for the rest of my life.

Thank you so much, sir.

I also want to say thank you to my prosecutor today. In American movies, the prosecutor usually is an angry person. And so here, a question arises: Whether maybe movies are lying or maybe I just got really lucky? And I know that my prosecutor is a good person. And the person that stopped all of the mess that was happening in my life. Thank you so much.

I am guilty.  I am deeply guilty.  I feel truly, deeply ashamed.  I feel deep regret.  I am terribly hurt.  I am mortally tired.

I lived through these emotions every day.  I ask for forgiveness from people who I hurt and to whom I created problems.  They could be -- I could not be justified in it.

I will never be the same.  This life lesson is more valuable than any PhD degree and I learned this lesson.  And I know this for certain.  I feel this.

(In English)  What is really in my mind after calls with my mom who need my help as never before, who doesn't have a stable electricity grid, water, she doesn't have heat.  I would say it is below zero.  It is minus 20 in Celsius.  I question myself, who I am.  And I don't have a proper answer at all.  I am just very, very terrible, awful, ungrateful son, in jail, soon in prison.  I must protect her.  I have to move her.  I have to be sure she is safe, she has warm food to eat, water to drink and heat to be alive.  I have to be sure she is not struggling, but I can do nothing.  Just nothing.  That is who I am right now.

Thank you so much, Your Honor.

THE COURT:  Thank you.

Anything else, Mr. Davis?

MR. DAVIS:  Nothing further, Your Honor.

THE COURT:  All right.  Mr. Wasserman, anything else?

MR. WASSERMAN:  No, Your Honor.

THE COURT:  All right.  Give me a few minutes.  I want to think about all of this and I'll come out and impose sentence.

(Recess taken at 12:15 p.m.)

THE COURT:  All right.  So I have assessed the particular facts of this case in the light of relevant 3553(a) factors including the guidelines --

We need the --

THE COURTROOM DEPUTY:  One second, Judge.  I'm sorry.

THE COURT:  Yes.  So I assessed the particular facts of this case in light of the relevant 3553(a) factors, including the sentencing guidelines and I want to provide some remarks for the record and for Mr. Didenko about my consideration, relating to the nature of the offense and his history and characteristics.

And I will start by saying that no sentencing is easy.  And this one, to my mind, is particularly challenging because there are very weighty and persuasive considerations on both sides of the balance here.  And I want to go through and talk about some of those.

With respect to the nature of the offense, the offense was a very serious one on multiple levels.  If you just take North Korea entirely out of the calculus here, engaging in this type of identity theft is not only wrong, but it imposes

enormous costs and burdens on the victims as is conveyed by the victim impact statement that we were presented with in this case.

It's not just a fraud on the companies that were involved and on the United States government, but on these very real victims. And it was a sophisticated offense, which was not a one-time or two-time or three-time error in judgment. It was conducted over a long period of time, required enormous efforts and sophistication to put in place. And that all goes I think to the nature of the offense. You then add to that the involvement of North Korea. And it becomes even more serious. And I do believe that Mr. Didenko was aware relatively early in the process that at least some people from North Korea were taking advantage of the services he was providing.

And it may not have dawned on him until he was confronted by the South Korean officials how serious that was and the threat that it imposed to international security. But he also wasn't in the dark as to North Korea's involvement only to be shocked by that fact when confronted by the South Korean officials. He was aware that North Korea was taking advantage of the services he was providing. And he made quite a bit of money from this scheme that he put in place. And so that all I think weighs in favor of substantial sentence given just the seriousness of the offense committed.

With respect to the characteristics of the offender,

putting aside what he did in this particular case, that all weighs very strongly in the other direction. I don't know that I ever recall a case that I had in which two prison officials or guards have volunteered to come forward and say that someone who has been in custody pending sentencing has impressed them in the way that the guards were impressed by Mr. Didenko. And I think those letters speak volumes, not just to his character but also to his, I think, rehabilitative state of mind and that he does want to put this behind him. He is not, as far as I can tell, angry that he has been caught. He is remorseful that he did what he did. And he does want to, as much as he can, make this right.

And although Mr. Didenko is not entitled under the guidelines to the zero-point offender adjustment, I think the considerations that underlie that adjustment do apply here. He is not anyone who I have any reason to think was otherwise or has been involved in any other unlawful activity other than what was at issue here.

I also agree with what Mr. Davis said in that the letter that I received from Mr. Didenko was one of the more extraordinary letters that I have ever received prior to a sentencing. And his allocution was similar. And it is always possible that Mr. Didenko is simply cognizant of the benefits that he receives from showing that type of remorse. But all I can do is make my best judgment and I don't believe that is the

case.  I believe that he is deeply remorseful about what he did, deeply ashamed about what he did and enormously pained by the fact that he is here and not in Ukraine where he can be helping his mother and where his country is in horrific war that is tearing the country apart and leaving his mother in terrible circumstances where he is not there to be able to assist her.  And I understand that enormous pain that he feels of being here.  And it's not simply the fact that he is sitting in a prison cell, but that he is not able to be doing what he thinks correctly, he should be doing, which is caring for and supporting his mother under these circumstances.

I have also considered the fact that Mr. Didenko spent 8 months in a Polish jail under horrendous conditions there and how that weighs for purposes of sentencing.

Based on the offense level of 26 and a criminal history category of 1 for Count 1, the guidelines range is 63 to 78 months.  And the Probation Office has recommended a 12-month downward variance.  And I will say that the Probation Office does not often recommend variances.  They do at times, but it's not their typical recommendation to the Court.  As well as then there is the two-year sentence on Count 4.  The government is seeking a sentence at the bottom end of the guidelines, which would be 63 months for Count 1, plus an additional 24 consecutive months for Count 4.

And Mr. Davis has asked that the Court vary downward.

And although he didn't say this in his papers, I think today he indicated to me that what he is really requesting is that I impose a sentence of no time for Count 1 and simply impose the 24 months that are mandatory for Count 2.

The final thing is I have considered the need to avoid unwarranted sentencing disparities in the *Chapman* case which I had as well and how his case compares to the *Chapman* case. And balancing all of this and given my I think strong conviction that Mr. Didenko will put this behind him and go on with his life and in a manner in which he is not going to be a repeat offender, I am going to obviously impose the 24-consecutive months for Count 4. And for Count 1, what I am going to do is I am going to impose -- I am going to adopt the 12-month Smith departure. And then I am going to vary down by 15 additional months based on Mr. Didenko's extraordinary remorse and acceptance of responsibility, the circumstances in his country and his mother being without his assistance there, the letters from the Sheriff's Office, which have talked about his attitudes while incarcerated, the time that he spent in the Polish jail under extremely difficult circumstances. Oh, and one other thing that I didn't mention before, but I also do give him credit for reaching out to the FBI. Again, it's possible that was strategic and that he knew that they were coming after them. But it's also I think to my mind probably more likely that he did -- it dawned on him when he was

confronted by the South Korean officials exactly how much damage his activities could do and he was trying to address that.  And by doing so, he reached out to the FBI, which is pretty extraordinary for somebody who is not in the United States and I think doesn't have reason to think the United States is going to be showing up in Ukraine to arrest him.  I think that speaks very well for his character as well.

And so let me do my math here and make sure I'm getting this right.  What I'm going to do then is impose a sentence of 36 months on Count 1 followed by a mandatory consecutive sentence of 24 months on Count 4.

Pursuant to the Sentencing Reform Act of 1984 in consideration of the provisions 18 U.S.C. section 3553 as well as the advisory sentencing guidelines, it is the judgment of the Court that you, Oleksandr Didenko, are hereby committed to the custody of the Bureau of Prisons for a term of 36 months on Count 1 and a term of 24 consecutive months on Count 4.  And I will impose a term of 12 months of supervised release for Counts 1 and 4 to run concurrently.  And I'll get to explain that in a minute.

In addition, you are ordered to pay a special assessment of $200 in accordance with 18 U.S.C. section 3013.

In imposing the term of supervised release, I am under the guidelines required to consider whether under the facts of this case a term of supervised release is warranted.

And I realize that at the end of the day, Mr. Didenko is almost certainly going to be promptly removed to Ukraine from the United States.  But there may be some lag in that process.  And that is why I included a period of 12 months.  To be clear, I don't intend for this term of supervised release to be served extraterritorially.  And the removal order takes precedence. So if he is removed from the United States that terminates the period of supervised release.  But in case there is some period of time or lapse in time that occurs before he is actually removed from the United States, I am going to impose the term of supervised release of 12 months.

And I will say that it does occur to me that it is at least possible given the war in Ukraine which hopefully will not be going on three or so years from now.  But if it is, it may make it a little bit more difficult to remove him promptly. And so I think that also warrants at least an interim period of supervised release.

While on supervision, you shall abide by the following mandatory conditions as well as all discretionary conditions recommended by the Probation Office in part D, sentencing options of the presentence report, which are imposed to establish the basic expectations for your conduct while on probation.  You mandatory conditions include:  You must not commit another federal, state or local crime.  You must not unlawfully possess a controlled substance.  You must refrain

from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of placement on supervision and at least two periodic drug tests thereafter as determined by the Court.  You must cooperate in the collection of DNA as directed by your probation officer.

And you must make restitution as ordered in accordance with 18 U.S.C. section 3663 and 3663(a).  You are ordered to pay restitution to company A, which Mr. Wasserman will identify for the Court in the amount of $46,547.28.  The Court determines that you don't have ability to pay interest and therefore I waive any interest or penalties that may accrue.

Restitution shall be made to the Clerk of the Court for the United States District Court, District of Columbia.

I'm also going to impose the following special conditions:  First, you must pay the balance of your restitution at a rate of no less than --

Mr. Davis, what should I specify for the rate for payment of restitution?

MR. DAVIS:  I would ask that Your Honor hold interest in abeyance.

THE COURT:  I have done that.  But what about rate of payment once he is released?

MR. DAVIS:  I just -- I mean, it's such a huge amount and I don't know what his circumstances are going to be.

THE COURT:  Okay.  Why don't I do this?  I am going to say an amount of not less than $250 a month.  If he can pay more than that, probation can come back to me and let me know.  If he can't pay that, you can come back to me and tell me I need to adjust it.

MR. DAVIS:  That's fair.  Thank you.

THE COURT:  To ensure compliance with your restitution obligations, you must provide the probation officer access to any requested financial information and authorize the release of any financial information.  The Probation Office may share financial information with the United States Attorney's Office.  You must not incur any new credit charges or open any lines of credit without approval of your probation officer.

Because you don't have legal status in the United States, you must surrender to the US Immigration Customs Enforcement and follow all of their instructions and reporting requirements until any deportation or removal proceedings are completed.  If you are ordered deported or removed from the United States, you must remain outside the United States unless legally authorized to reenter.  If you reenter the United States, you must report to the nearest probation office within 72 hours of your return.

Because you employed sophisticated technological means to carry out the fraudulent scheme at issue, you are ordered to participate in a cybercrime management and will

inform your probation officer of all computer devices possessed or accessible to you.  This includes desktops or laptop computers, smartphones, smart watches and tablets, smart appliances, internet of things devices, personal assistant devices and all network accessing devices, including internet connectible gaming systems.  You will not acquire or access any new or additional computer devices unless approved by your probation officer.  You must also inform your probation officer of all computer devices, including internet providers and social media user accounts, both upon entering supervision and in the event you create or receive additional user accounts. You are permitted use of standard computer devices with internet access, but must permit US Probation Office to configure, manage and install any monitoring software on all of your approved standard computer devices.  And to ensure compliance with the cybercrime management condition, your standard computing devices are limited to those that can be configured, managed and monitored by the Probation Office.

To ensure compliance with the cybercrime management and computer monitoring with internet condition, you must allow US Probation Office to conduct initial and periodic unannounced searches of any computer devices or network systems used or possessed by you.  Initial searches of computer devices and networks will be conducted to determine if they contain or allow access to any material or capabilities which would

violate the Court ordered conditions.  Periodic unannounced searches of the devices and systems will be conducted to verify the monitoring software is functional, that required configurations are unaltered and that no circumvention efforts have been undertaken.  You are responsible for all computer monitoring and/or management costs for your approved devices.

I did impose a fine because I conclude that Mr. Didenko does not have the means to pay a fine.

Pursuant to Rule 32.2(a) of the Federal Rules of Criminal procedure, you, Oleksandr Didenko, shall forfeit a money judgment in the amount of $1,420,185.64.  And you will be entitled to a credit for any of the amounts identified on pages 9 and 10 of the plea agreement that the government seizes and has access to.  And the government shall provide you with credit for those amounts.

The Probation Office shall release the presentence investigation report to all appropriate agencies, which include the United States Probation Office in the approved district of residence in order to execute the sentence of the Court.

Treatment agencies shall run the presentence report to the Probation Office upon the defendant's completion or termination from treatment.

Pursuant to 18 U.S.C. section 3742, under the terms of your plea agreement, you have the right to appeal the sentence imposed by the Court if the period of imprisonment is

longer than the statutory maximum or the sentence departs upward from the applicable sentencing guidelines range.  In addition to any appeal with respect to your sentence, you have a right to appeal your conviction consistent with the terms of your plea agreement, including if you believe your guilty plea was somehow unlawful or involuntary or if there is some other fundamental defect in the proceeding that was not waived in your plea agreement.  If you choose to appeal, you must file any appeal within 14 days after the Court enters judgment.  And if you are unable to afford the cost of an appeal, you may request permission from the Court to file an appeal without cost to you.

You have the right to bring a challenge pursuant to 28 U.S.C. section 2255 to challenge your convictions or sentence, if new and currently unavailable information becomes available to you or based on a claim that you received ineffective assistance of counsel when entering a plea of guilty to the offense of conviction or in connection with sentencing.

Let me ask, pursuant to the *United States versus Hunter,* Mr. Wasserman, are there any objections to the sentence imposed that have not already been preserved?

MR. WASSERMAN:  No, Your Honor.

THE COURT:  Mr. Davis?

MR. DAVIS:  No, Your Honor.

THE COURT: All right. Is there a motion, Mr. Wasserman?

MR. WASSERMAN: Yes, Your Honor. The government would move to dismiss the remaining counts of the indictment at this time.

THE COURT: Okay. That motion is granted.

MR. WASSERMAN: Thank you.

THE COURT: All right. So, Mr. Didenko, I wish you well. I know you would like to be home caring for your mother. And I hope that you continue along the very positive path that I have seen since you have been arrested and present in the United States. So good luck to you and I hope that you're able to get home to your country and to your mother as soon as you can. Thank you.

(Proceedings concluded at 12:47 p.m.)

C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 20th day of February, 2026.

_____
Sherry Lindsay, RPR
Official Court Reporter

MR. DAVIS: **[33]**  2/11 4/8 5/13 8/19 9/25 11/7 12/1 12/6 12/16 13/4 14/18 15/7 15/11 31/22 32/16 33/1 33/19 33/21 34/2 34/22 35/18 35/22 36/9 37/7 37/9 38/7 38/10 39/20 41/24 49/20 49/24 50/6 53/25
MR. WASSERMAN: **[75]**
MS. FIELD: **[5]**  11/2 16/10 16/16 16/21 16/23
THE COURT REPORTER: **[1]**  12/5
THE COURT: **[119]**
THE COURTROOM DEPUTY: **[3]**  2/4 2/15 42/10
THE DEFENDANT: **[7]**  2/19 2/23 3/1 5/16 5/20 5/24 39/25

**$**

**$1,420,185.64 [4]**  6/24 13/17 14/21 52/11
**$1.42 [1]**  19/5
**$1.42 million [1]**  19/5
**$10,000 [1]**  33/10
**$100 [2]**  10/18 24/25
**$200 [2]**  17/24 47/22
**$25,000 [1]**  10/24
**$250 [1]**  50/2
**$250,000 [3]**  10/16 10/17 10/24
**$45,687.72 [1]**  11/15
**$46,547.28 [3]**  11/16 31/9 49/9
**$550,000 [1]**  6/24
**$73,000 [1]**  14/12

**1**

**1-level [1]**  9/11
**1.5 million [1]**  6/25
**10 [4]**  7/1 14/10 14/22 52/13
**100 percent [2]**  14/5 34/15
**102 [3]**  18/24 27/25 28/9
**1028 [4]**  3/7 6/10 7/13 8/12
**10th [1]**  5/6
**111 [1]**  28/8
**11:05 [1]**  1/6
**12 [12]**  16/14 16/19 16/20 16/21 16/23 17/1 17/8 17/20 37/2 47/18 48/4 48/11
**12-month [5]**  16/11 17/12 37/11 45/18 46/14
**12:15 [1]**  42/5
**12:47 [1]**  54/15
**13 [1]**  11/15
**1343 [2]**  3/6 6/6
**1349 [2]**  3/6 6/6
**1350 [1]**  1/17
**14 [1]**  53/9
**14-level [1]**  6/22
**15 [3]**  38/13 46/15 49/2
**18 [11]**  3/6 3/7 6/6 6/10 11/8 18/2 27/13 47/13 47/22 49/7 52/23
**19 [1]**  1/5
**1984 [1]**  47/12

**2**

**2-level [9]**  6/25 7/2 7/7 7/20 7/23 9/6 9/8 9/11 19/13
**2-year [1]**  39/7
**20 [3]**  6/7 6/21 41/13
**20001 [1]**  1/25
**20036 [1]**  1/18
**2010 [1]**  34/22
**202 [1]**  1/17
**2020 [1]**  20/24
**2021 [1]**  20/24
**2022 [3]**  21/2 33/15 35/2
**2023 [1]**  20/12
**2024 [3]**  20/17 23/11 23/17
**2026 [3]**  1/5 5/6 55/11
**20530 [1]**  1/14
**20th [1]**  55/11
**210 [1]**  32/19

**2255 [1]**  53/14
**24 [4]**  1/4 19/2 19/4 47/4 47/11 47/17
**24-261 [2]**  1/4 2/4
**24-consecutive [1]**  46/12
**25,000 [2]**  10/17 11/3
**250,000 [1]**  11/3
**26 [2]**  9/15 45/15
**261 [2]**  1/4 2/4
**262 [1]**  32/19
**28 [1]**  53/14
**2B1.1 [1]**  8/9
**2B1.1A1 [1]**  6/19
**2B1.6 [2]**  7/19 8/5

**3**

**3.25 [1]**  37/15
**300 [1]**  29/5
**3013 [1]**  47/22
**32.2 [1]**  52/9
**333 [1]**  1/24
**3553 [4]**  18/2 42/7 42/12 47/13
**36 [3]**  19/2 47/10 47/16
**3663 [3]**  11/9 49/7 49/7
**3742 [1]**  52/23
**3E1.1A [1]**  9/11
**3E1.1B [1]**  9/12

**4**

**4.25 [1]**  37/13
**40 [1]**  27/13
**46,000-dollar [1]**  11/17
**46,547 [1]**  11/19
**46,547.28 [1]**  11/22

**5**

**51 [1]**  38/5
**52 [1]**  38/6
**555 [1]**  1/14
**5B1.1B3 [1]**  10/11

**6**

**6-month [3]**  15/21 17/14 31/5
**6.25 [1]**  37/12
**63 [4]**  9/17 19/16 45/16 45/23
**66 [1]**  16/2
**6710 [1]**  1/24
**68 [1]**  29/6

**7**

**7.25 [2]**  37/10 37/14
**72 [1]**  50/22
**72,987.64 [1]**  13/23
**75 [2]**  16/12 37/11
**78 [3]**  9/17 18/25 45/17

**8**

**8-month [1]**  39/4
**87 [4]**  19/13 19/16 31/4 37/10

**9**

**90 [1]**  16/1

**A**

**a.m [1]**  1/6
**abeyance [1]**  49/21
**abide [1]**  48/18
**abilities [1]**  35/23
**ability [1]**  49/10
**able [9]**  13/6 25/23 26/1 29/8 30/23 38/23 45/6 45/9 54/12
**about [29]**  4/13 5/18 5/23 8/10 15/9 16/8 17/18 18/21 19/22 21/21 23/25 26/25 30/16 32/25 34/11 34/24 35/15 35/25 36/2 36/6 36/13 40/17 42/3 42/14 42/21 45/1 45/2 46/18 49/22
**above [1]**  55/6
**above-entitled [1]**  55/6
**accept [2]**  5/25 12/20
**acceptance [1]**  46/16

**access [8]**  25/23 26/1 26/6 50/9 51/6 51/12 51/14
**accessible [1]**  51/2
**accessing [1]**  51/5
**accordance [2]**  47/22 49/7
**accounts [11]**  13/19 13/21 13/23 14/1 14/9 14/14 26/9 27/2 34/12 51/10 51/11
**accrue [1]**  49/12
**accurate [1]**  12/17
**acquire [1]**  51/6
**Act [1]**  47/12
**Action [1]**  1/3
**activities [1]**  47/2
**activity [3]**  21/9 32/8 44/17
**actually [19]**  5/3 7/11 11/11 23/2 25/14 26/16 29/8 32/6 33/9 33/15 34/2 34/6 34/22 34/25 35/7 35/10 36/17 37/9 48/9
**add [2]**  3/19 43/10
**addition [5]**  10/1 18/11 18/18 47/21 53/3
**additional [5]**  9/18 45/24 46/15 51/7 51/11
**address [12]**  2/25 19/11 25/10 25/11 26/21 27/12 31/23 31/24 31/24 34/4 39/19 47/2
**addresses [1]**  34/5
**adequate [1]**  18/8
**adjust [1]**  50/5
**adjustment [4]**  9/14 9/14 44/14 44/15
**adjusts [1]**  19/13
**adopt [1]**  46/13
**advantage [2]**  43/14 43/20
**advised [1]**  20/25
**advisory [1]**  47/14
**affected [1]**  32/6
**affects [1]**  16/9
**afford [2]**  18/8 53/10
**after [11]**  4/2 21/22 22/14 23/9 23/11 23/12 23/12 34/8 41/10 46/24 53/9
**again [5]**  22/14 23/3 37/17 38/24 46/22
**against [1]**  14/8
**agencies [3]**  32/5 52/17 52/20
**aggravated [5]**  3/6 6/9 7/13 7/14 9/19
**aggravating [2]**  4/21 9/14
**ago [2]**  34/9 38/11
**agree [4]**  7/22 32/16 35/18 44/19
**agreed [1]**  13/15
**agreement [9]**  4/13 13/20 14/10 14/16 14/22 52/13 52/24 53/5 53/8
**agrees [2]**  7/24 9/8
**aiding [2]**  29/2 35/8
**alien [1]**  37/1
**alive [1]**  41/18
**all [46]**  2/13 2/21 4/10 7/21 9/4 9/5 12/9 13/9 15/13 15/25 16/25 17/24 19/22 20/6 29/10 30/7 31/21 32/22 35/25 36/8 38/12 38/19 39/6 39/18 40/13 40/24 41/15 41/25 42/2 42/3 42/6 43/9 43/22 44/1 44/24 46/8 48/19 50/16 51/1 51/5 51/9 51/14 52/5 52/17 54/1 54/8
**allocution [2]**  36/6 44/22
**allow [2]**  51/20 51/25
**allowed [2]**  28/16 40/4
**almost [2]**  14/12 48/1
**along [3]**  3/11 32/22 54/10
**alongside [1]**  34/12
**already [3]**  31/8 40/2 53/22
**also [24]**  3/12 5/2 5/21 6/22 6/25 7/7 8/12 9/10 17/22 18/8 18/22 20/23 23/25 32/19 40/20 43/18 44/8 44/19 45/12 46/21 46/24 48/16 49/15 51/8
**although [8]**  8/19 12/10 28/2 28/24 31/14 38/1 44/13 46/1
**always [1]**  44/22

**A**

am [27]  8/3 15/7 15/9 17/17 18/20 28/24 30/9 33/12 33/13 34/16 36/9 40/7 41/1 41/1 41/2 41/2 41/14 41/15 41/20 46/11 46/12 46/13 46/13 46/14 47/23 48/10 50/1
amend [2]  10/19 11/6
amendments [1]  9/21
AMERICA [2]  1/3 2/5
American [1]  40/21
among [1]  18/15
amount [15]  4/1 11/14 11/24 12/19 12/20 13/17 14/9 14/20 19/4 29/9 31/9 49/9 49/24 50/2 52/11
amounts [4]  14/22 34/13 52/12 52/15
analysis [1]  28/25
angry [2]  40/21 44/10
another [1]  48/24
answer [3]  31/3 32/23 41/14
anxious [1]  4/11
any [43]  2/24 2/24 3/17 4/15 4/18 4/21 5/8 5/8 5/11 5/12 6/12 7/9 7/10 7/17 9/21 9/21 10/19 11/24 12/8 13/2 13/6 15/11 23/7 31/3 37/15 41/8 44/16 44/17 49/1 49/11 50/9 50/10 50/12 50/12 50/17 51/6 51/14 51/22 51/25 52/12 53/3 53/9 53/21
anybody [1]  8/16
anyone [4]  4/24 15/5 16/8 44/16
anything [9]  10/19 11/6 16/7 16/25 36/7 39/12 39/22 41/23 41/25
anyway [1]  21/10
anywhere [1]  16/23
apart [1]  45/5
appeal [7]  52/24 53/3 53/4 53/8 53/9 53/10 53/11
APPEARANCES [1]  1/11
appeared [1]  32/11
appears [2]  13/20 25/24
appliances [1]  51/4
applicable [2]  19/15 53/2
applied [2]  7/18 8/20
applies [1]  7/12
apply [5]  6/16 7/20 7/23 7/24 44/15
applying [1]  8/11
Appreciate [1]  11/4
approach [1]  2/6
approached [4]  21/17 22/3 22/8 33/8
appropriate [4]  15/20 17/15 19/6 52/17
appropriating [1]  32/10
approval [1]  50/13
approved [4]  51/7 51/15 52/6 52/18
approximately [1]  17/6
are [50]  2/18 3/3 3/17 4/6 4/18 4/21 5/7 5/14 11/10 11/19 12/24 13/25 14/9 14/16 16/5 17/19 30/16 30/22 31/25 32/4 33/4 33/13 33/22 34/12 34/13 34/14 35/6 35/8 35/15 38/13 38/14 38/19 40/16 40/22 42/19 46/4 47/15 47/21 48/21 49/7 49/25 50/17 50/18 50/24 51/12 51/17 52/4 52/5 53/10 53/21
arguments [1]  37/16
arises [1]  40/22
Arizona [1]  24/18
around [2]  25/21 34/23
arrest [1]  47/6
arrested [3]  23/19 36/20 54/11
arrived [1]  36/24
arthritis [2]  38/4 38/10
article [1]  34/17
as [58]
ashamed [2]  41/2 45/2
aside [1]  44/1

ask [6]  31/7 39/5 39/8 41/4 49/20 53/20
asked [3]  24/6 24/24 45/25
asking [2]  5/7 35/3
assessed [2]  42/6 42/11
assessment [5]  8/14 10/18 17/24 18/19 47/22
asset [1]  38/20
assist [1]  45/7
assistance [6]  5/15 22/24 22/25 27/19 46/17 53/17
assistant [1]  51/4
assisting [1]  36/15
assumed [1]  8/23
ate [1]  36/23
attached [1]  3/13
attacking [2]  35/8 35/16
attempt [1]  23/7
attention [1]  32/17
attitudes [1]  46/19
attorney [1]  40/11
ATTORNEY'S [2]  1/13 50/11
authorize [1]  50/9
authorized [2]  21/11 50/20
available [2]  18/17 53/16
Avenue [2]  1/17 1/24
avoid [2]  18/14 46/6
aware [15]  20/22 22/1 22/2 22/20 23/6 27/3 30/9 32/17 32/18 32/25 33/15 33/24 33/24 43/12 43/20
away [1]  40/9
awful [1]  41/15

**B**

B1.6 [2]  8/8 8/13
back [6]  14/24 31/15 36/16 38/21 50/3 50/4
backup [2]  3/22 4/2
bad [2]  21/12 34/10
balance [2]  42/20 49/16
balancing [1]  46/8
banging [1]  34/23
Bankruptcy [1]  1/23
barely [1]  36/23
base [1]  6/19
based [12]  10/25 13/20 14/25 16/3 16/11 17/24 18/25 20/20 21/2 45/15 46/15 53/16
basic [1]  48/22
basis [1]  8/24
be [69]
beat [1]  36/10
became [2]  34/18 35/9
because [32]  4/13 6/16 6/17 6/20 6/22 7/1 7/2 7/8 7/12 9/6 9/9 9/14 10/9 10/13 13/18 17/5 20/10 21/10 21/13 29/23 29/24 31/13 32/24 33/13 34/18 35/3 35/4 35/25 42/19 50/14 50/23 52/7
becomes [3]  32/17 43/11 53/15
been [21]  2/14 2/16 12/7 13/6 14/1 14/1 14/4 14/6 18/16 26/3 36/19 38/2 39/14 39/14 39/15 44/5 44/10 44/17 52/5 53/22 54/11
before [10]  1/9 4/16 17/7 21/17 22/21 35/5 36/19 41/11 46/21 48/9
behalf [3]  2/9 2/12 36/6
behind [2]  44/9 46/9
being [4]  15/3 29/13 45/8 46/17
belabor [1]  27/21
believe [17]  7/23 12/1 17/10 17/13 17/14 21/15 22/6 22/25 23/2 23/5 27/25 31/4 31/12 43/12 44/25 45/1 53/5
believes [1]  38/16
below [3]  19/7 38/13 41/13
benefit [2]  15/3 27/22
benefits [1]  44/23
beside [1]  39/24
best [2]  27/6 44/25
better [1]  33/5
between [7]  9/17 10/16 16/23

24/10 32/4 32/24 33/2
beyond [1]  53/19
biggest [1]  32/3
bit [7]  11/12 20/10 23/25 29/20 36/3 43/21 48/15
bombings [1]  38/15
bones [1]  36/24
both [6]  2/13 7/21 11/19 12/14 42/20 51/10
bottom [2]  4/12 45/22
break [1]  32/20
bring [3]  30/23 37/14 53/13
brings [3]  6/3 26/20 37/13
brought [2]  30/4 36/20
burdens [1]  43/1
Bureau [1]  47/16
business [5]  21/3 27/3 27/9 28/16 38/2
businesses [1]  25/7
buy [2]  25/4 25/5

**C**

calculated [1]  10/25
calculation [4]  4/14 4/20 16/4 18/25
calculus [1]  42/24
California [2]  24/17 26/18
call [1]  34/18
calls [1]  41/10
came [3]  22/21 36/2 38/2
can [29]  2/21 4/2 4/3 4/16 12/20 12/24 17/20 18/23 23/25 26/13 27/17 31/23 33/4 33/5 35/4 35/11 35/12 38/17 38/25 41/19 44/10 44/11 44/25 45/3 50/2 50/3 50/4 51/17 54/14
can't [5]  17/8 34/10 37/17 37/17 50/4
capabilities [1]  51/25
caring [2]  45/10 54/9
carries [1]  6/7
carry [1]  50/24
case [27]  2/4 4/20 5/15 11/10 15/6 17/20 28/6 29/10 29/11 30/10 30/12 31/25 34/5 35/25 36/3 39/11 42/7 42/12 43/3 44/1 44/3 45/1 46/6 46/7 46/8 47/25 48/8
cases [2]  15/22 30/13
cash [3]  13/21 13/23 14/12
catch [1]  30/4
category [1]  45/16
caught [2]  30/20 44/10
caused [1]  7/6
ceased [1]  21/9
cell [1]  45/9
Celsius [1]  41/13
certain [4]  13/21 13/25 39/15 41/9
certainly [5]  8/16 21/2 28/19 30/12 48/2
certify [1]  55/4
challenge [2]  53/13 53/14
challenging [1]  42/18
chance [2]  5/21 8/3
Chapman [13]  24/1 24/4 24/7 24/11 24/12 24/13 27/25 29/2 32/4 32/4 32/18 46/6 46/7
Chapman's [1]  28/18
character [5]  27/5 35/14 36/11 44/7 47/7
characteristic [1]  7/16
characteristics [3]  18/13 42/16 43/25
charge [1]  8/12
charges [2]  6/5 50/12
chat [1]  21/2
chime [1]  12/11
Chinese [1]  20/25
choose [1]  53/8
chose [2]  21/5 21/12
Christopher [2]  1/16 2/11
circumstance [1]  39/11

## C

circumstances [7]  15/4 18/12 45/6 45/11 46/16 46/20 49/25
circumvention [1]  52/4
citizen [4]  29/2 29/4 29/21 29/22
claim [1]  53/16
claimed [1]  21/21
clarifications [1]  9/21
clarify [1]  10/19
clear [3]  8/22 12/10 48/4
clearer [1]  34/18
clerk [2]  12/24 49/13
co [2]  26/24 27/8
co-conspirator [1]  26/24
co-conspirators [1]  27/8
cognitive [1]  35/23
cognizant [1]  44/23
collect [1]  12/14
collection [1]  49/4
college [1]  37/23
COLUMBIA [3]  1/1 1/13 49/14
come [9]  11/11 21/25 29/25 33/6 39/24 42/3 44/4 50/3 50/4
comes [1]  35/22
coming [3]  31/15 36/16 46/24
comment [2]  7/19 8/5
comments [2]  8/10 36/13
commit [3]  3/5 6/5 48/24
committed [3]  7/3 43/24 47/15
communicate [2]  30/14 39/1
communicated [1]  32/6
communication [4]  20/20 23/2 33/1 33/25
communications [1]  21/2
companies [4]  27/13 29/5 32/12 43/4
company [4]  11/25 12/23 25/17 49/8
company's [1]  25/13
comparatively [1]  29/13
compares [1]  46/7
complaint [1]  22/21
completed [1]  50/18
completion [1]  52/21
compliance [3]  50/7 51/16 51/19
comply [1]  18/4
computer [10]  24/2 51/1 51/7 51/9 51/12 51/15 51/20 51/22 51/23 52/5
computers [3]  25/21 25/24 51/3
computing [1]  51/17
concerns [1]  29/3
conclude [1]  52/7
concluded [1]  54/15
conclusion [1]  11/22
concurrently [1]  47/19
concurs [1]  9/1
condition [2]  51/16 51/20
conditions [8]  36/23 38/12 45/13 48/19 48/20 48/23 49/16 52/1
conduct [7]  7/6 18/9 18/16 18/19 29/4 48/22 51/21
conducted [3]  43/8 51/24 52/2
configurations [1]  52/4
configure [1]  51/14
configured [1]  51/18
confirm [1]  7/22
confronted [5]  22/9 33/18 43/16 43/19 47/1
confusion [1]  8/9
congress [2]  5/2 18/2
conjunction [1]  7/15
connectible [1]  51/6
Connecticut [1]  1/17
connection [1]  53/18
consecutive [8]  6/12 9/19 16/3 19/17 45/24 46/12 47/11 47/17
consider [7]  3/18 4/7 18/1 18/12 37/15 39/6 47/24
consideration [3]  36/25 42/15 47/13

considerations [2]  42/19 44/15
considered [4]  6/12 6/14 44/14 46/5
consisted [1]  26/5
consistent [1]  53/4
consisting [2]  7/6 16/2
conspiracy [5]  3/5 6/5 7/12 9/18 10/1
conspirator [1]  26/24
conspirators [1]  27/8
constitutes [1]  55/5
Constitution [1]  1/24
consult [1]  16/7
contact [2]  23/14 24/20
contacted [5]  22/12 22/23 23/13 24/24 25/4
contacting [1]  22/15
contacts [2]  24/22 34/16
contain [1]  51/24
contests [1]  3/25
context [1]  37/10
continue [3]  21/13 23/9 54/10
continued [1]  23/18
contrasting [1]  27/24
controlled [2]  48/25 49/1
conversation [1]  20/12
conversations [1]  33/21
conveyed [1]  43/1
conviction [4]  8/12 46/9 53/4 53/18
convictions [1]  53/14
convince [1]  20/6
cooperate [1]  49/4
correct [13]  4/5 11/6 14/11 14/15 17/10 22/11 23/20 24/9 25/16 25/19 28/4 29/15 55/5
correctly [1]  45/10
cost [2]  53/10 53/12
costs [2]  43/1 52/6
could [8]  26/7 26/10 32/7 35/12 35/22 41/6 41/6 47/2
counsel [4]  2/6 2/7 4/24 53/17
count [36]  3/5 3/6 6/5 6/8 6/8 6/8 6/14 6/16 6/18 9/18 9/20 10/1 10/2 10/5 10/8 10/13 10/18 12/8 16/2 16/3 19/1 19/2 19/17 19/17 45/16 45/21 45/23 45/24 46/3 46/4 46/12 46/12 47/10 47/11 47/17 47/17
counter [1]  29/20
country [12]  15/1 15/19 15/20 20/4 31/18 35/8 35/16 36/14 45/4 45/5 46/17 54/13
counts [5]  3/5 10/15 12/3 47/19 54/4
course [2]  5/20 5/24
court [44]  1/1 1/22 1/23 3/15 3/21 5/6 6/10 6/13 8/7 8/13 10/2 10/5 10/17 11/9 11/24 13/15 16/1 16/24 17/23 18/21 20/15 29/3 30/2 30/17 31/1 31/3 31/7 35/22 39/19 45/20 45/25 47/15 49/4 49/9 49/10 49/13 49/14 52/1 52/19 52/25 53/9 53/11 55/4 55/14
Court's [3]  8/14 10/21 31/4
courtroom [1]  40/11
courts [2]  1/23 29/23
create [3]  24/19 24/20 51/11
created [2]  27/2 41/5
credit [9]  14/8 14/21 37/4 37/13 46/22 50/12 50/13 52/12 52/15
crime [2]  27/15 48/24
Crimea [1]  34/24
crimes [1]  18/10
criminal [8]  1/3 2/4 9/16 18/9 20/4 23/7 45/15 52/10
criminals [1]  34/7
criteria [1]  19/9
criticizing [1]  8/16
cryptocurrency [2]  13/25 14/13
culpability [2]  21/14 28/22
culpable [1]  28/15

currently [1]  53/15
custody [2]  50/10 50/16
customer [1]  25/7
customers [9]  20/22 20/24 21/4 21/7 24/5 24/18 25/22 26/5 33/2
customers' [1]  26/6
Customs [1]  50/15
cybercrime [3]  50/25 51/16 51/19

## D

daily [1]  38/15
damage [1]  47/2
dark [1]  43/18
Dated [1]  55/11
Davis [22]  1/16 1/16 1/16 2/12 3/25 4/6 5/11 5/18 5/23 9/24 11/6 11/23 13/3 14/16 31/21 40/12 40/16 41/23 44/19 45/25 49/18 53/24
dawned [2]  43/15 46/25
day [5]  31/13 35/13 41/4 48/1 55/11
days [2]  49/2 53/9
DC [4]  1/5 1/14 1/18 1/25
dead [1]  36/10
deal [1]  27/16
dealing [3]  20/25 32/22 33/8
deceit [1]  6/20
decide [1]  17/20
deep [2]  40/11 41/2
deeper [1]  28/15
deeply [4]  41/1 41/2 45/1 45/2
defect [1]  53/7
defendant [13]  1/7 1/16 3/4 7/5 9/9 10/8 10/9 10/12 18/10 18/13 24/11 24/13 26/25
defendant's [1]  52/21
defendants [1]  18/15
defense [4]  4/7 8/17 11/23 14/24
define [2]  36/11 37/20
defrauded [1]  27/13
defrauding [1]  29/6
degree [1]  41/8
demonstrate [1]  30/16
Department [2]  12/12 12/13
departs [1]  53/1
departure [22]  4/22 14/24 14/25 15/5 15/5 15/10 15/11 15/14 15/16 15/21 15/21 16/12 16/18 16/20 17/13 17/13 17/14 17/18 31/5 37/11 37/16 46/14
deportable [1]  37/1
deportation [1]  50/17
deported [2]  36/18 50/18
deprived [3]  37/2 37/3 37/4
deputies [1]  36/1
deputy [3]  3/14 3/14 12/23
describe [1]  37/18
describes [1]  33/7
desktops [1]  51/2
detail [1]  19/22
detailed [1]  34/20
determine [3]  4/17 4/20 51/24
determined [1]  49/4
determines [1]  49/10
determining [1]  7/18
deterrence [2]  18/9 30/18
devices [13]  51/1 51/4 51/5 51/5 51/7 51/9 51/12 51/15 51/17 51/22 51/23 52/2 52/6
did [30]  3/19 8/19 8/20 10/22 21/16 21/18 21/25 22/23 22/25 23/9 23/14 24/19 24/20 24/20 26/20 31/2 32/17 32/18 33/6 33/6 34/21 35/21 40/4 44/1 44/11 44/11 45/2 45/2 46/25 52/7
DIDENKO [52]  1/6 2/5 2/12 2/21 3/4 4/10 5/14 6/5 6/9 9/10 13/19 14/8 15/1 15/18 19/5 20/9 21/6 22/20 24/15 25/10 26/4 26/14 26/15 26/22 27/4 28/14 28/21 29/16 29/20 31/14 32/1 32/9 32/25

**D**

DIDENKO... [19]   33/2 33/4 35/19 36/2 36/4 39/19 42/14 43/12 44/6 44/13 44/20 44/23 45/12 46/9 47/15 48/1 52/8 52/10 54/8
Didenko's [8]   2/17 3/12 3/15 6/23 18/22 25/23 26/5 46/15
didn't [13]   20/6 20/15 33/5 33/17 33/19 34/9 36/1 37/15 37/23 40/4 40/5 46/1 46/21
difference [1]   38/22
different [6]   7/25 10/10 11/1 20/10 29/1 39/12
difficult [2]   46/20 48/15
difficulty [1]   2/24
dig [1]   23/1
direct [1]   24/10
directed [1]   49/5
direction [1]   44/2
directions [1]   29/1
disagree [2]   8/4 8/14
disagreement [2]   4/15 4/16
disagreements [1]   9/21
discrepancy [2]   11/12 32/24
discretion [2]   12/12 28/5
discretionary [1]   48/19
dismiss [1]   54/4
disparities [2]   18/15 46/6
dissemination [1]   9/7
distinct [1]   15/6
distinguishing [1]   32/3
distraught [1]   35/15
district [8]   1/1 1/1 1/10 1/13 1/23 49/14 49/14 52/18
DNA [1]   49/5
do [41]   4/2 4/3 5/11 8/12 9/1 12/1 12/15 12/15 12/23 12/23 15/17 15/20 15/22 16/19 17/16 17/20 24/19 24/21 24/24 26/8 30/7 30/15 30/17 30/23 31/1 31/9 32/23 38/18 38/21 38/21 41/19 43/12 44/15 44/25 45/19 46/13 46/21 47/2 47/8 47/9 50/1
document [1]   5/19
documentation [1]   12/19
documents [1]   3/22
does [18]   4/1 7/24 9/5 11/23 20/11 29/21 34/3 34/3 34/4 36/10 37/9 37/18 37/20 44/9 44/11 45/19 48/12 52/8
doesn't [6]   7/23 38/24 39/2 41/11 41/12 47/5
doing [8]   22/24 23/6 29/17 29/18 34/9 45/9 45/10 47/3
DOJ [2]   12/4 12/7
dollar [1]   11/17
dollars [1]   27/21
don't [40]   3/21 6/16 7/11 8/13 8/22 8/24 12/7 12/19 14/5 16/6 16/9 17/13 19/21 19/21 22/15 23/1 23/1 23/2 26/25 28/7 28/9 30/7 30/11 30/13 31/13 34/6 35/9 36/17 36/18 38/9 38/13 40/9 41/14 44/2 44/25 48/5 49/10 49/25 50/1 50/14
done [5]   16/18 21/10 37/19 40/17 49/22
doubt [2]   38/9 38/18
down [3]   37/11 37/13 46/14
downward [3]   16/11 45/18 45/25
drink [1]   41/18
drug [2]   49/2 49/3
due [1]   36/21

**E**

each [2]   10/15 10/18
earlier [1]   6/8
early [3]   20/24 33/15 43/12
earned [1]   37/4
earned-time [1]   37/4
earphones [1]   2/18
ears [1]   36/8

**F**

easier [1]   39/23
Eastern [1]   50/6
easy [1]   42/18
eat [1]   41/17
educated [2]   37/22 37/24
efforts [3]   30/13 43/9 52/4
elderly [2]   38/3 38/5
electricity [1]   41/12
else [6]   4/24 16/8 39/12 39/22 41/23 41/25
elsewhere [1]   25/24
email [4]   3/12 21/20 34/4 34/5
emotional [1]   27/17
emotions [1]   41/4
employed [1]   50/23
employment [1]   25/9
end [10]   12/9 19/1 19/15 19/16 31/13 31/15 31/15 37/2 45/22 48/1
ends [1]   17/7
enforcement [3]   22/19 23/6 50/16
engage [1]   30/25
engaged [2]   7/6 29/4
engaging [2]   21/21 42/24
English [1]   41/10
enhancement [4]   7/11 7/23 9/9 19/14
enlist [1]   33/9
enormous [3]   43/1 43/8 45/7
enormously [1]   45/2
enough [3]   5/17 21/12 31/20
ensure [4]   18/3 50/7 51/15 51/19
enter [2]   13/16 39/5
entered [1]   32/20
entering [2]   51/10 53/17
enters [1]   53/9
entirely [1]   42/24
entitled [7]   9/10 9/13 12/14 15/3 44/13 52/12 55/6
entitlement [1]   12/15
error [1]   43/7
essentially [4]   20/4 26/2 26/4 26/10
establish [1]   48/22
establishes [1]   20/22
Europe [1]   30/8
even [5]   4/2 30/22 31/18 36/1 43/11
event [3]   8/11 12/8 51/11
events [1]   35/12
ever [2]   44/3 44/21
every [1]   41/4
everybody [1]   40/10
everyone [2]   9/8 35/25
everything [2]   37/10 39/11
evidence [1]   21/7
exactly [1]   47/1
exaggerate [1]   40/5
example [1]   32/10
execute [1]   52/19
exhibits [1]   3/13
expectations [1]   48/22
experience [3]   12/7 16/17 17/4
explain [2]   33/5 47/19
express [1]   40/11
extended [1]   33/21
extent [5]   26/25 27/5 29/1 30/15 30/24
extraordinary [3]   44/21 46/15 47/4
extraterritorially [1]   48/6
extremely [1]   46/20
eyes [1]   35/24

**F**

facilitating [2]   26/6 26/11
fact [14]   6/2 10/25 14/25 15/17 18/21 21/1 28/21 33/6 35/15 39/5 43/19 45/3 45/8 45/12
factors [7]   4/21 5/1 18/1 32/3 39/6 42/8 42/12
facts [5]   4/14 5/25 42/7 42/11 47/25

factual [2]   5/8 5/12
fair [3]   5/23 10/6 50/6
fairly [1]   38/11
false [1]   32/15
far [4]   29/13 29/17 40/2 44/9
farm [2]   24/18 28/19
farms [11]   23/11 24/2 24/2 24/6 24/14 24/16 24/20 25/1 25/2 26/4 26/18
fashion [1]   4/25
favor [2]   29/10 43/23
FBI [16]   21/16 21/17 21/20 22/12 22/16 22/17 22/19 22/23 23/13 23/14 30/14 33/7 34/3 36/4 46/22 47/3
February [4]   1/5 5/6 35/2 55/11
February 10th [1]   5/6
February 2022 [1]   35/2
federal [3]   29/3 48/24 52/9
feel [4]   37/18 41/1 41/2 41/9
feels [1]   45/7
few [1]   42/2
Field [2]   11/2 16/6
figure [1]   11/18
file [2]   53/8 53/11
filed [1]   5/5
filings [1]   32/14
final [4]   4/25 5/4 6/1 46/5
financial [4]   27/16 50/9 50/10 50/11
find [3]   30/22 34/7 34/17
findings [1]   6/1
fine [7]   10/15 10/16 10/23 14/19 17/23 52/7 52/8
finished [1]   12/24
first [3]   4/16 19/19 49/16
focus [1]   33/19
focused [1]   33/20
focusing [1]   36/13
follow [2]   4/3 50/16
followed [1]   47/10
following [2]   48/19 49/15
food [2]   27/19 41/17
foregoing [1]   55/5
forfeit [1]   52/10
forfeiture [7]   12/3 12/8 13/16 14/9 14/21 19/4 31/8
forgiveness [1]   41/5
form [1]   3/11
forth [5]   5/8 5/12 6/1 17/25 18/2
forward [2]   11/11 44/4
found [2]   18/16 20/13
four [1]   26/16
Fourth [1]   1/14
fraud [4]   3/5 6/6 6/20 43/4
fraudulent [3]   7/2 26/11 50/24
freelancer [1]   26/6
friend [3]   3/16 36/2 38/14
fully [1]   5/14
function [1]   27/7
functional [1]   52/3
fundamental [1]   53/7
funny [1]   36/11
further [3]   12/19 16/25 41/24
future [1]   18/9

**G**

gain [1]   6/22
gaming [1]   51/6
gave [3]   27/25 28/9 33/9
generally [1]   17/19
get [6]   4/12 26/8 30/20 38/17 47/19 54/13
gets [2]   35/4 37/6
getting [2]   25/9 47/9
give [7]   8/3 14/8 15/20 31/5 38/21 42/2 46/22
given [9]   15/17 18/21 23/4 28/15 32/2 35/23 43/23 46/8 48/13
gives [1]   30/24
giving [1]   26/6
go [10]   4/11 4/12 19/22 25/4 25/5

**G**

**go...** **[5]** 30/12 32/8 36/5 42/20 46/9
**goes** **[2]** 12/25 43/9
**going** **[30]** 4/11 14/7 17/17 22/9 27/2 30/3 30/10 30/23 31/4 31/23 32/12 36/9 36/18 37/3 37/4 38/15 46/10 46/11 46/13 46/13 46/13 46/14 47/6 47/9 48/2 48/10 48/14 49/15 49/25 50/1
**good** **[10]** 2/8 2/10 2/11 2/13 35/14 37/7 37/8 37/13 40/24 54/12
**goodness** **[2]** 35/7 35/13
**got** **[3]** 25/7 27/14 40/23
**governing** **[1]** 5/2
**government** **[24]** 2/7 3/17 4/23 11/13 12/21 13/6 13/19 13/22 14/8 15/15 18/24 19/8 19/12 32/15 32/24 35/8 37/22 37/23 39/2 43/5 45/22 52/13 52/14 54/3
**government's** **[3]** 3/10 5/22 28/8
**graduate** **[1]** 37/23
**granted** **[1]** 54/6
**gratitude** **[1]** 40/11
**greater** **[1]** 18/4
**grid** **[1]** 41/12
**guards** **[2]** 44/4 44/6
**guess** **[2]** 28/24 36/5
**guideline** **[4]** 6/15 10/22 19/16 32/19
**guidelines** **[30]** 4/14 4/20 6/4 6/14 6/15 6/16 7/14 7/19 7/22 9/16 10/3 10/7 10/11 10/16 10/25 16/4 18/11 18/14 18/25 19/1 19/7 36/17 42/8 42/13 44/14 45/16 45/23 47/14 47/24 53/2
**guilty** **[8]** 3/4 6/9 18/16 32/21 41/1 41/1 53/5 53/18

**H**

**had** **[19]** 5/17 5/21 13/8 16/7 20/13 20/20 21/22 24/22 26/3 26/7 26/15 26/19 27/18 28/15 31/22 36/3 38/10 44/3 46/7
**halfway** **[2]** 15/4 17/6
**hammer** **[1]** 37/17
**Hana** **[1]** 11/2
**hand** **[2]** 2/25 29/12
**handling** **[1]** 13/2
**happen** **[1]** 31/16
**happened** **[2]** 21/19 32/5
**happening** **[2]** 13/21 40/25
**happens** **[2]** 32/1 32/2
**happy** **[3]** 24/5 31/3 39/22
**hard** **[2]** 33/24 38/7
**has** **[42]** 2/14 2/16 3/4 5/2 6/9 6/12 6/18 6/20 6/22 7/25 9/19 11/11 12/7 13/5 13/19 13/22 15/1 17/23 18/2 19/6 20/23 27/15 31/3 31/8 36/16 36/19 37/12 37/19 38/3 38/10 38/16 39/14 39/14 39/22 41/17 44/5 44/5 44/10 44/17 45/17 45/25 52/14
**hasn't** **[2]** 19/6 38/1
**hassle** **[1]** 27/16
**have** **[87]**
**having** **[3]** 8/17 27/16 27/17
**he** **[198]**
**hear** **[5]** 2/21 4/23 4/25 36/7 39/22
**heard** **[1]** 19/8
**hearing** **[1]** 18/20
**heart** **[1]** 40/3
**heartfelt** **[1]** 35/19
**heat** **[3]** 38/13 41/12 41/18
**help** **[5]** 26/8 34/7 34/19 38/23 41/11
**helping** **[3]** 27/4 35/15 45/4
**her** **[9]** 7/25 27/20 29/11 29/16 32/19 38/3 41/16 41/16 45/7
**here** **[28]** 3/3 7/12 8/15 11/11

12/24 13/21 17/14 20/2 22/19 24/2 24/5 24/12 24/18 24/23 26/6 35/16 36/19 36/20 36/24 40/7 40/10 40/22 42/20 42/24 44/15 44/18 45/3 45/8 47/8
**hereby** **[1]** 47/15
**herself** **[1]** 7/25
**high** **[1]** 38/19
**higher** **[1]** 16/4
**highlight** **[2]** 19/11 19/19
**highly** **[2]** 31/14 38/18
**him** **[35]** 15/20 22/3 22/8 22/9 26/19 27/4 32/4 33/8 33/8 33/9 33/9 33/10 33/11 33/17 34/4 35/25 36/2 36/3 37/13 37/14 37/20 37/24 38/16 38/18 39/3 39/8 39/14 39/24 43/15 44/9 46/9 46/22 46/25 47/6 48/15
**himself** **[4]** 21/17 22/23 23/3 24/20
**hired** **[1]** 26/3
**his** **[68]**
**history** **[4]** 9/16 18/13 42/16 45/16
**hit** **[1]** 33/17
**hold** **[1]** 49/20
**home** **[4]** 33/6 37/17 54/9 54/13
**honest** **[1]** 40/6
**Honor** **[43]** 2/8 2/11 2/15 3/19 4/8 5/10 5/13 8/2 8/7 9/23 9/25 11/2 11/18 12/1 12/17 13/4 13/8 15/7 15/15 16/10 17/3 19/10 27/25 28/9 31/8 31/22 35/2 35/18 36/5 37/5 37/15 39/5 39/8 39/16 39/25 40/1 41/21 41/24 42/1 49/20 53/23 53/25 54/3
**Honor's** **[1]** 36/13
**HONORABLE** **[1]** 1/9
**hope** **[4]** 21/5 34/17 54/10 54/12
**hopefully** **[1]** 48/13
**horrendous** **[1]** 45/13
**horrible** **[2]** 35/13 36/23
**horribles** **[1]** 19/23
**horrific** **[1]** 45/4
**horse** **[1]** 36/10
**hours** **[1]** 50/22
**house** **[2]** 15/4 17/6
**how** **[14]** 13/18 21/25 25/12 26/13 32/17 32/17 33/17 35/12 36/13 37/17 43/16 45/14 46/7 47/1
**huge** **[1]** 49/24
**human** **[1]** 29/13
**hundreds** **[1]** 27/20
**Hunter** **[1]** 53/21
**hurt** **[2]** 41/2 41/5

**I**

**I'd** **[1]** 39/22
**I'll** **[4]** 3/19 7/24 42/3 47/19
**I'm** **[23]** 4/11 8/2 8/16 12/6 14/3 14/5 15/11 18/1 27/6 28/11 31/2 34/15 34/24 34/24 35/3 35/7 35/11 36/8 39/15 42/10 47/8 47/9 49/15
**identification** **[4]** 7/9 7/10 7/17 13/10
**identified** **[3]** 13/9 23/3 52/12
**identify** **[3]** 13/7 22/23 49/9
**identities** **[3]** 21/11 27/13 29/6
**identity** **[9]** 3/7 6/9 7/13 7/15 9/19 27/17 32/2 32/10 42/25
**ignore** **[1]** 21/5
**illegal** **[1]** 21/9
**imagine** **[1]** 35/4
**immigration** **[2]** 15/2 50/15
**impact** **[7]** 3/11 13/12 19/20 27/14 27/15 36/14 43/2
**impacted** **[1]** 27/20
**impacts** **[1]** 27/17
**implications** **[1]** 37/19
**important** **[1]** 31/1
**impose** **[25]** 4/16 5/3 6/11 10/2 10/5 10/17 16/1 18/3 30/10 30/17

31/7 31/13 31/18 36/19 39/6 42/3 46/3 46/4 46/10 46/16 47/3 47/9 47/18 48/10 49/15 52/7
**imposed** **[9]** 7/15 18/6 18/14 19/14 20/7 43/17 48/21 52/25 53/22
**imposes** **[2]** 6/13 42/25
**imposing** **[2]** 4/3 47/23
**impressed** **[2]** 44/5 44/6
**imprisoned** **[1]** 39/14
**imprisonment** **[9]** 6/7 6/11 6/13 6/21 10/10 16/2 17/7 37/3 52/25
**inability** **[1]** 17/5
**incarcerated** **[1]** 46/19
**incarceration** **[1]** 16/13
**inclination** **[1]** 7/20
**include** **[5]** 3/13 17/17 18/5 48/23 52/17
**included** **[1]** 48/4
**includes** **[2]** 14/12 51/2
**including** **[5]** 42/8 42/13 51/5 51/9 53/5
**incorrectly** **[1]** 19/14
**increase** **[6]** 6/22 7/1 7/2 7/7 7/20 9/6
**increased** **[1]** 29/10
**incumbent** **[1]** 29/22
**incur** **[1]** 50/12
**indicate** **[3]** 10/22 33/3 36/18
**indicated** **[4]** 6/19 20/23 31/8 46/2
**indicates** **[2]** 11/14 21/7
**indictment** **[1]** 54/4
**individual** **[1]** 17/5
**individualized** **[1]** 18/19
**individuals** **[4]** 21/8 26/19 32/11 32/13
**indulgence** **[1]** 10/21
**ineffective** **[1]** 53/17
**ineligible** **[2]** 10/8 10/12
**inform** **[2]** 51/1 51/8
**information** **[7]** 9/7 17/25 34/16 50/9 50/10 50/11 53/15
**initial** **[2]** 51/21 51/23
**install** **[1]** 51/14
**instance** **[1]** 27/18
**instead** **[2]** 16/15 17/1
**instructions** **[2]** 25/12 50/16
**intend** **[2]** 31/9 48/5
**intentionally** **[1]** 7/5
**interaction** **[1]** 24/10
**interest** **[4]** 20/18 49/10 49/11 49/20
**interested** **[2]** 18/20 28/24
**interim** **[1]** 48/16
**intermediary** **[1]** 34/16
**international** **[1]** 43/17
**internationally** **[1]** 30/15
**internet** **[5]** 51/4 51/5 51/9 51/13 51/20
**Interpol** **[1]** 23/21
**interpreter** **[4]** 2/2 2/14 2/16 39/24
**interviews** **[1]** 26/8
**invasion** **[2]** 34/25 34/25
**investigating** **[1]** 22/20
**investigation** **[2]** 3/8 52/17
**involuntary** **[1]** 53/6
**involved** **[15]** 6/20 7/1 7/4 7/5 7/8 9/6 20/14 20/16 23/5 34/1 35/4 35/6 39/11 43/5 44/17
**involvement** **[5]** 19/21 27/1 28/16 43/11 43/18
**involving** **[1]** 21/10
**iPads** **[1]** 38/25
**is** **[177]**
**isn't** **[3]** 29/21 35/24 36/11
**issue** **[2]** 44/18 50/24
**it** **[87]**
**it's** **[32]** 6/8 6/17 8/5 11/14 12/14 14/7 15/20 21/15 28/11 29/22 31/1 31/14 31/19 33/24 34/20 35/5 35/6 36/9 36/11 36/12

**I**

**it's... [12]**  38/7 38/13 38/14 38/15 39/15 39/23 43/4 45/8 45/20 46/22 46/24 49/24
**its [1]**  11/13

**J**

**jail [7]**  32/8 36/21 37/12 39/4 41/16 45/13 46/20
**jails [1]**  38/25
**January [2]**  23/15 23/16
**jobs [1]**  26/8
**judge [3]**  1/10 35/20 42/10
**judges [1]**  16/19
**judgment [9]**  13/16 13/16 14/20 19/4 43/7 44/25 47/14 52/11 53/9
**jurisdiction [1]**  30/1
**just [44]**  2/25 3/19 4/12 5/1 7/22 8/3 8/14 8/22 10/21 15/9 18/7 19/6 19/11 19/23 22/4 23/21 27/12 27/15 33/12 33/16 34/6 34/10 34/16 34/20 35/11 36/2 36/11 37/9 37/17 37/20 38/15 38/24 39/2 39/23 40/5 40/10 40/23 41/15 41/19 42/23 43/4 43/23 44/7 49/24
**Justice [1]**  12/13
**Justice's [1]**  12/13
**justified [1]**  41/6

**K**

**keep [1]**  40/9
**Kiev [1]**  38/14
**kind [3]**  26/20 38/19 40/13
**knew [11]**  21/2 21/7 21/11 23/4 25/3 27/2 32/4 32/5 32/7 32/21 46/23
**know [58]**
**knowledge [3]**  21/14 21/21 26/25
**known [1]**  32/9
**knows [2]**  21/6 35/5
**Korea [20]**  19/21 19/23 20/7 20/14 20/16 20/21 22/3 22/4 27/1 27/1 27/22 29/2 29/9 34/13 34/15 35/9 42/24 43/11 43/13 43/20
**Korea's [1]**  43/18
**Korean [13]**  20/17 20/23 21/1 21/4 21/8 21/23 21/25 33/7 33/18 34/11 43/16 43/19 47/1
**Koreans [13]**  20/3 21/21 23/4 23/12 32/7 32/7 32/22 33/4 33/9 33/16 33/25 34/8 35/6

**L**

**lag [1]**  48/3
**lapse [1]**  48/9
**laptop [16]**  23/11 24/2 24/5 24/14 24/16 24/18 24/19 24/25 24/25 25/2 25/4 25/5 26/4 26/18 28/19 51/2
**laptops [5]**  24/6 25/6 25/7 25/14 26/2
**largely [1]**  36/21
**last [1]**  5/3
**later [1]**  35/6
**law [5]**  4/14 12/14 18/7 22/19 23/6
**lawyer [2]**  5/15 36/22
**lead [1]**  9/15
**leader [1]**  9/9
**learn [2]**  20/14 33/25
**learned [1]**  41/8
**least [12]**  12/2 15/19 17/3 27/10 31/5 31/17 32/14 32/14 43/13 48/13 48/16 49/3
**leaving [1]**  45/5
**legal [1]**  50/14
**legally [1]**  50/20
**less [6]**  6/24 29/13 29/17 29/25 49/17 50/2
**lessen [1]**  40/5
**lesson [2]**  41/7 41/8

**let [10]**  5/7 7/20 7/21 7/24 8/14 17/14 47/16 50/7 50/20
**let's [3]**  3/25 5/4 11/1
**letter [9]**  3/13 3/15 3/15 20/15 39/22 40/3 40/4 40/6 44/20
**letters [6]**  26/21 35/19 36/1 44/7 44/21 46/18
**level [17]**  6/15 6/19 6/22 6/25 7/2 7/7 7/18 7/20 7/23 9/6 9/8 9/11 9/11 9/15 19/13 35/5 45/15
**levels [2]**  16/4 42/23
**liability [2]**  23/8 32/13
**lie [1]**  40/4
**life [5]**  38/8 40/18 40/25 41/7 46/10
**light [5]**  5/1 8/25 16/7 42/7 42/12
**like [11]**  4/24 15/22 19/8 28/21 29/4 30/9 34/11 38/17 39/8 39/19 54/9
**likely [4]**  23/6 29/25 31/19 46/25
**limited [2]**  28/5 51/17
**Lindsay [3]**  1/22 55/4 55/13
**line [1]**  4/12
**lines [1]**  50/13
**linked [1]**  25/21
**liquidated [5]**  14/1 14/2 14/4 14/6 14/13
**listed [2]**  14/9 14/22
**little [6]**  11/1 20/10 23/25 29/20 36/3 48/15
**lived [1]**  41/4
**lives [1]**  38/14
**living [1]**  38/7
**local [1]**  48/24
**located [3]**  26/2 28/21 29/25
**locked [1]**  36/22
**long [3]**  34/9 38/11 43/8
**longer [1]**  53/1
**look [2]**  7/21 8/15
**looking [2]**  8/9 22/18
**lot [4]**  31/22 31/23 34/14 34/18
**low [4]**  2/19 19/1 19/15 19/16
**loyalties [1]**  29/21
**luck [1]**  54/12
**lucky [1]**  40/23
**ludicrous [1]**  38/14
**lying [1]**  40/22
**Lymar [5]**  3/16 26/22 26/24 27/1 27/5

**M**

**made [2]**  43/21 49/13
**mail [1]**  25/10
**mailed [1]**  25/6
**maintain [1]**  20/5
**major [1]**  33/17
**make [16]**  2/17 4/13 10/22 13/17 26/10 31/2 33/12 34/19 35/11 38/22 39/8 44/12 44/25 47/8 48/15 49/6
**makes [2]**  31/12 31/18
**making [1]**  21/13
**man [2]**  36/11 37/18
**manage [1]**  51/14
**managed [1]**  51/18
**management [4]**  50/25 51/16 51/19 52/6
**manager [1]**  9/10
**mandatory [11]**  6/11 6/17 10/13 11/9 19/2 39/7 39/9 46/4 47/10 48/19 48/23
**manner [1]**  46/10
**many [4]**  26/13 31/25 31/25 36/12
**material [1]**  51/25
**materials [2]**  3/17 4/6
**math [1]**  47/8
**matter [3]**  12/13 22/18 55/6
**matters [2]**  5/8 5/12
**maximum [4]**  6/7 6/21 10/15 53/1
**may [17]**  4/1 8/9 10/5 10/25 16/7 23/11 23/18 26/12 30/19 35/16

**38/2 43/15 48/3 48/15 49/11 50/10 53/10**
**maybe [6]**  35/23 36/22 39/2 39/2 40/22 40/23
**me [37]**  4/17 4/23 4/24 4/25 5/7 7/20 7/22 8/4 8/14 8/24 12/22 13/20 17/16 17/16 20/6 20/18 23/25 26/13 26/20 32/24 33/14 34/18 34/18 36/5 40/8 40/13 40/14 40/18 42/2 46/2 47/8 48/12 50/3 50/3 50/4 50/4 53/20
**mean [11]**  7/4 23/10 27/18 30/7 30/11 31/12 36/9 36/10 38/14 39/11 49/24
**means [7]**  7/5 7/7 7/9 7/10 7/17 50/24 52/8
**media [1]**  51/10
**meeting [1]**  21/24
**memo [3]**  21/3 36/9 38/12
**memorandum [6]**  3/10 3/13 5/22 11/13 19/12 20/11
**mental [1]**  27/19
**mention [1]**  46/21
**merge [1]**  12/3
**merges [1]**  12/8
**mess [1]**  40/25
**message [4]**  30/1 31/1 39/13 39/14
**messes [1]**  32/13
**met [4]**  21/23 23/12 34/8 36/4
**Michael [1]**  1/16
**Michelin [1]**  33/10
**Michelin-rated [1]**  33/10
**microphone [1]**  12/5
**might [5]**  12/14 23/8 30/8 30/25 34/17
**military [3]**  38/18 38/20 39/5
**million [2]**  6/25 19/5
**mind [4]**  41/10 42/18 44/8 46/24
**minimum [3]**  28/9 39/7 39/9
**minus [1]**  41/13
**minute [2]**  7/21 47/20
**minutes [1]**  42/2
**miscommunication [1]**  36/21
**missed [2]**  8/17 8/17
**mitigate [1]**  23/7
**mitigating [1]**  4/21
**modern [1]**  38/25
**mom [3]**  37/25 39/1 41/11
**moment [2]**  15/10 34/10
**money [13]**  12/25 13/16 14/20 14/21 21/13 24/21 26/9 29/9 34/13 34/14 34/19 43/22 52/11
**monitored [1]**  51/18
**monitoring [4]**  51/14 51/20 52/3 52/6
**month [12]**  15/21 16/11 17/12 17/14 24/25 31/5 31/5 37/11 39/4 45/18 46/14 50/2
**months [44]**  9/17 16/1 16/2 16/3 16/12 16/15 16/15 16/19 16/19 17/4 17/6 17/8 17/20 18/25 19/1 19/2 19/3 19/13 19/16 19/17 19/17 28/1 28/8 31/4 32/19 32/20 36/21 37/2 37/10 37/12 45/13 45/17 45/23 45/24 46/4 46/12 46/15 47/10 47/11 47/16 47/17 47/18 48/4 48/11
**more [18]**  6/24 7/1 8/15 10/2 10/4 10/6 10/7 17/18 28/15 28/22 29/24 35/19 41/7 43/11 44/20 46/25 48/15 50/3
**morning [5]**  2/8 2/10 2/11 2/13 3/3
**mortally [1]**  41/3
**MOSS [1]**  1/9
**most [2]**  21/8 30/18
**mostly [1]**  24/23
**mother [10]**  37/21 38/16 38/23 39/4 45/4 45/5 45/11 46/17 54/9 54/13
**motion [2]**  54/1 54/6
**motivations [1]**  22/15

**M**

motives [2]  23/4 23/8
move [2]  41/16 54/4
movies [2]  40/21 40/22
moving [2]  31/25 31/25
Mr [19]  2/12 2/17 2/21 3/12 3/18 3/25 4/6 5/7 5/11 5/18 9/22 10/20 13/5 13/17 15/13 19/8 41/25 49/8 53/21
Mr. [72]
Mr. Chapman [1]  24/11
Mr. Davis [14]  5/23 9/24 11/6 11/23 13/3 14/16 31/21 40/12 40/16 41/23 44/19 45/25 49/18 53/24
Mr. Didenko [44]  4/10 5/14 6/5 6/9 9/10 13/19 14/8 15/1 15/18 19/5 20/9 21/6 22/20 24/15 26/4 26/14 26/15 26/22 27/4 28/14 28/21 29/16 29/20 31/14 32/1 32/9 32/25 33/2 33/4 35/19 36/2 36/4 39/19 42/14 43/12 44/6 44/13 44/20 44/23 45/12 46/9 48/1 52/8 54/8
Mr. Didenko's [6]  3/15 6/23 18/22 25/23 26/5 46/15
Mr. Lymar [5]  3/16 26/22 26/24 27/1 27/5
Mr. Wasserman [2]  12/11 54/2
Ms [3]  16/6 24/13 29/2
Ms. [9]  24/1 24/4 24/7 24/12 27/25 28/18 32/4 32/4 32/18
Ms. Chapman [8]  24/1 24/4 24/7 24/12 27/25 32/4 32/4 32/18
Ms. Chapman's [1]  28/18
much [11]  8/23 28/15 29/25 32/17 39/25 40/1 40/19 40/25 41/21 44/11 47/1
multifactor [1]  28/25
multiple [1]  42/23
must [18]  32/9 41/16 48/23 48/24 48/25 49/1 49/4 49/6 49/16 50/8 50/12 50/15 50/19 50/21 51/8 51/13 51/20 53/8
my [40]  3/20 4/2 6/1 7/19 11/10 12/7 12/11 13/20 14/18 17/3 17/9 20/12 26/20 28/2 28/5 29/4 35/7 35/8 35/13 36/9 38/12 39/16 40/3 40/3 40/5 40/11 40/11 40/18 40/20 40/23 40/25 41/10 41/11 41/11 42/14 42/18 44/25 46/8 46/24 47/8
myself [2]  40/6 41/14

**N**

name [3]  2/7 12/22 34/3
national [1]  19/24
nationals [2]  24/23 25/3
nature [5]  18/12 27/3 42/15 42/22 43/10
nearest [1]  50/21
necessary [1]  18/4
need [20]  4/1 4/3 4/15 4/19 4/19 12/19 18/5 18/12 18/13 18/14 18/19 19/22 36/17 36/18 39/13 40/9 41/11 42/9 46/5 50/5
needed [2]  27/19 40/15
needs [3]  30/2 38/16 39/3
neither [1]  14/23
network [2]  51/5 51/22
networks [1]  51/24
never [4]  30/20 36/19 41/7 41/11
new [3]  50/12 51/7 53/15
no [28]  1/4 3/19 5/10 5/13 8/10 8/10 8/18 9/15 9/23 9/25 12/18 13/4 15/9 15/11 15/16 17/22 22/19 28/13 28/13 32/21 36/16 42/1 42/17 46/3 49/17 52/4 53/23 53/25
None [1]  4/8
normally [2]  12/7 39/12
North [33]  19/21 19/23 20/3 20/7 20/14 20/16 20/23 21/1 21/4 21/8

21/21 27/1 27/1 27/22 29/2 29/9 33/25 34/11 34/13 34/15 35/6 35/9 42/24 43/11 43/13 43/18 43/20
not [79]
note [2]  20/11 34/2
nothing [4]  11/7 41/19 41/19 41/24
notice [1]  13/9
notification [1]  13/10
notified [1]  13/6
now [4]  18/1 37/20 41/20 48/14
number [3]  2/4 4/11 34/4
numerous [1]  11/10
NW [3]  1/14 1/17 1/24

**O**

oath [1]  2/2
object [4]  8/4 8/22 8/24 10/19
objection [3]  11/24 12/18 13/2
objections [4]  4/19 5/8 5/11 53/21
obligations [1]  50/8
obtain [1]  7/9
obviously [11]  19/13 19/20 21/9 24/17 27/12 27/20 27/22 29/20 30/18 39/21 46/11
occur [3]  28/17 30/14 48/12
occurred [3]  8/9 20/12 23/11
occurs [2]  17/6 48/9
off [1]  21/13
offender [4]  9/13 43/25 44/14 46/11
offenders [1]  30/2
offense [32]  6/19 6/20 6/23 7/1 7/4 7/4 7/8 7/12 7/16 7/16 7/18 8/12 9/6 9/15 10/11 18/6 18/8 18/12 19/20 26/13 27/25 28/20 36/10 37/18 42/15 42/22 42/23 43/6 43/10 43/24 45/15 53/18
offenses [1]  30/16
offer [3]  22/24 22/25 24/21
office [27]  1/13 3/9 3/10 5/5 6/18 6/21 6/25 7/7 7/24 9/5 15/25 16/8 16/20 17/22 45/17 45/19 46/18 48/20 50/10 50/12 50/21 51/13 51/18 51/21 52/16 52/18 52/21
officer [6]  49/5 50/8 50/13 51/1 51/8 51/8
official [4]  1/23 34/17 55/4 55/14
officials [8]  20/17 21/23 21/25 33/18 43/16 43/20 44/3 47/1
often [1]  45/19
oh [4]  31/11 35/7 35/13 46/20
Okay [24]  2/24 2/25 3/1 3/2 4/9 5/25 9/3 11/5 11/8 11/23 13/14 15/17 15/24 16/14 16/22 17/11 22/22 23/16 25/20 27/11 31/20 39/21 50/1 54/6
old [1]  18/25
OLEKSANDR [5]  1/6 2/5 3/4 47/15 52/10
once [2]  36/22 49/23
one [33]  8/15 10/6 10/8 11/11 11/13 11/20 11/25 13/12 15/22 17/13 20/24 24/4 24/5 24/17 26/10 26/17 26/17 26/20 26/21 27/14 32/3 33/2 34/5 35/13 35/19 35/22 42/10 42/18 42/23 43/7 44/20 46/21 49/2
one-stop [1]  26/10
one-time [1]  43/7
only [10]  13/11 13/12 14/25 15/18 21/6 35/5 35/6 37/2 42/25 43/18
open [2]  40/6 50/12
opened [1]  40/3
operate [2]  25/12 25/14
operated [1]  24/16
operating [4]  24/6 25/18 26/18 27/9

operation [2]  21/9 28/16
opportunity [1]  50/4
options [1]  48/21
order [8]  3/20 12/24 14/20 17/23 19/5 31/8 48/6 52/19
ordered [7]  16/24 47/21 49/6 49/8 50/18 50/25 52/1
ordering [1]  11/24
organization [1]  20/4
organizer [1]  9/9
other [24]  3/17 4/6 6/12 7/10 8/20 13/6 15/4 15/4 15/8 15/12 16/19 24/14 25/21 27/3 29/12 30/13 31/3 32/13 37/15 44/2 44/17 44/17 46/21 53/6
others [2]  39/13 39/15
otherwise [3]  7/4 7/4 44/16
ought [1]  17/1
our [5]  8/8 16/12 20/19 21/1 23/22
out [15]  12/9 20/13 21/16 21/25 30/12 30/22 32/18 33/10 36/1 36/11 42/3 42/24 46/22 47/3 50/24
outside [3]  7/3 30/2 50/19
outstanding [1]  4/18
over [9]  12/2 29/5 35/24 36/12 36/22 37/21 38/15 38/19 43/8
overseas [2]  28/22 29/25
own [1]  38/3

**P**

p.m [2]  42/5 54/15
page [3]  11/13 11/15 11/15
pages [3]  14/10 14/22 52/12
paid [1]  27/21
pain [1]  45/7
pained [1]  45/2
papers [2]  26/12 46/1
parade [1]  19/22
paragraph [1]  11/21
part [4]  3/20 5/3 7/2 48/20
participate [1]  50/25
participation [1]  6/23
particular [5]  19/25 27/18 42/7 42/11 44/1
particularly [2]  20/2 42/18
parties [2]  13/15 18/20
parts [3]  25/21 31/25 32/1
party [1]  14/23
past [1]  16/18
path [1]  54/10
pause [6]  2/3 2/20 7/21 8/1 8/6 30/24
pausing [1]  8/3
pay [11]  30/4 32/17 34/14 37/23 47/21 49/8 49/10 49/16 50/2 50/4 52/8
paying [1]  24/25
payment [2]  49/19 49/23
payments [1]  26/10
penalties [1]  49/11
pending [1]  44/5
people [23]  20/25 21/11 24/20 26/7 26/13 26/15 26/16 26/17 27/3 27/8 27/10 27/15 29/6 30/8 30/19 30/24 32/6 34/12 35/7 35/15 41/5 43/13
per [2]  24/25 24/25
percent [2]  14/5 34/15
perform [1]  26/3
perhaps [3]  23/7 30/24 33/15
period [7]  10/4 43/8 48/4 48/8 48/8 48/16 52/25
periodic [3]  49/3 51/21 52/1
permission [1]  53/11
permit [1]  51/13
permits [1]  10/2
permitted [1]  51/12
person [10]  26/17 26/17 29/13 32/2 35/12 39/10 40/13 40/21 40/24 40/24
personal [4]  9/7 22/4 22/6 51/4

**P**
persons [1]  27/13
persuasive [1]  42/19
PhD [1]  41/8
phone [1]  34/4
Piety [1]  24/8
place [2]  43/9 43/22
placed [1]  2/2
placement [1]  49/2
Plaintiff [2]  1/4 1/12
platforms [1]  26/7
play [1]  40/4
plea [12]  13/20 14/10 14/22 19/14
 28/3 32/21 52/13 52/24 53/5 53/5
 53/8 53/17
please [2]  2/6 12/5
pled [3]  3/4 6/9 28/20
plus [2]  19/2 45/23
podium [1]  2/6
point [12]  9/13 14/2 17/21 21/16
 22/13 23/4 26/20 31/2 32/18 36/6
 40/3 44/14
points [2]  9/16 19/11
Poland [2]  23/19 36/20
policy [1]  18/11
Polish [4]  36/21 39/4 45/13 46/20
portion [1]  35/14
position [6]  15/16 20/10 20/20
 21/1 27/6 29/23
positive [1]  54/10
possess [1]  48/25
possessed [2]  51/1 51/23
possible [3]  44/23 46/23 48/13
potential [2]  23/7 32/13
practice [2]  12/2 12/15
precedence [1]  48/6
presence [1]  40/10
present [2]  17/16 54/11
presented [1]  43/2
presentence [11]  3/8 4/18 5/4 5/9
 5/12 5/18 6/1 17/25 48/21 52/16
 52/20
preserved [1]  53/22
press [1]  30/12
presumably [1]  25/20
pretty [1]  47/4
price [1]  30/4
prior [3]  20/13 20/21 44/21
prison [3]  41/16 44/3 45/9
Prisons [1]  47/16
probably [4]  12/11 30/19 33/4
 46/24
probation [34]  3/9 3/10 5/5 6/18
 6/21 6/25 7/7 7/24 9/1 9/5 10/9
 10/12 11/3 15/25 17/22 45/17
 45/18 48/20 48/23 49/5 50/3 50/8
 50/10 50/13 50/21 51/1 51/8 51/8
 51/13 51/18 51/21 52/16 52/18
 52/21
problem [1]  33/18
problems [2]  27/19 41/6
procedure [1]  52/10
proceed [1]  14/19
proceeding [2]  4/10 53/7
proceedings [3]  50/17 54/15 55/6
process [5]  22/24 31/22 37/25
 43/13 48/3
produce [1]  7/9
professional [1]  40/16
programmers [1]  34/11
programs [1]  37/4
project [1]  39/2
promote [2]  18/7 18/10
prompted [2]  21/24 22/17
promptly [4]  15/18 15/19 48/2
 48/15
proper [2]  4/20 41/14
properly [1]  34/6
prosecutor [3]  40/20 40/21 40/24
protect [2]  18/9 41/16
provide [10]  6/15 7/14 12/22

15/21 17/17 18/7 34/7 42/13 50/8
 52/14
provided [7]  3/23 13/8 21/3 25/11
 26/4 26/9 40/14
providers [1]  51/9
provides [2]  19/15 30/18
providing [2]  43/14 43/21
provision [1]  8/11
provisions [2]  6/3 47/13
prudent [1]  21/8
public [3]  9/7 18/9 35/9
pull [1]  35/24
pulling [1]  35/23
punishment [1]  18/7
purposes [6]  6/2 9/19 17/17 18/4
 18/5 45/14
pursuant [7]  11/8 15/22 47/12
 52/9 52/23 53/13 53/20
push [1]  39/2
put [6]  37/10 38/12 43/9 43/22
 44/9 46/9
putting [1]  44/1

**Q**
question [12]  16/8 17/2 20/9
 20/17 30/7 32/16 32/21 32/23
 33/23 35/23 40/22 41/14
questioning [1]  8/20
questions [2]  31/3 31/23
quite [1]  43/21

**R**
raise [1]  2/25
raises [1]  29/3
RANDOLPH [1]  1/9
range [8]  10/22 18/14 19/7 19/16
 28/7 32/19 45/16 53/2
rarely [1]  39/7
rate [3]  49/17 49/18 49/22
rated [1]  33/10
reach [1]  21/16
reached [1]  47/3
reaching [1]  46/22
reacting [1]  35/17
reaction [1]  28/25
read [2]  34/17 39/21
reads [1]  34/6
real [2]  27/16 43/6
realize [2]  20/16 48/1
realized [3]  20/10 23/5 36/14
realizes [1]  35/7
really [12]  24/4 26/5 27/19 28/20
 30/6 33/5 33/6 36/10 38/23 40/23
 41/10 46/2
reason [4]  15/12 35/3 44/16 47/5
reasons [3]  8/20 15/8 36/12
recall [2]  28/9 44/3
receive [2]  26/10 51/11
received [11]  3/8 9/14 13/11
 32/20 37/11 39/14 39/15 40/2
 44/20 44/21 53/16
receives [1]  44/24
Recess [1]  42/5
recollection [5]  4/2 17/9 20/12
 28/2 29/5
recommend [10]  9/6 9/17 10/4 10/7
 10/16 16/11 16/20 16/21 19/15
 45/19
recommendation [6]  3/9 5/5 16/9
 16/12 28/8 45/20
recommendations [1]  12/20
recommended [4]  6/22 15/25 45/17
 48/20
recommending [3]  16/14 17/22
 19/12
recommends [2]  6/25 7/7
record [4]  2/7 8/22 42/14 55/6
records [2]  3/23 18/16
reduction [2]  9/11 9/11
reenter [2]  50/20 50/20
reference [3]  8/10 27/6 33/3
referring [2]  8/8 8/13

reflect [1]  18/6
Reform [1]  52/9
refrain [1]  48/25
regret [1]  41/2
rehabilitation [1]  18/10
rehabilitative [1]  44/8
relating [1]  42/15
relationship [2]  24/1 24/3
relatively [1]  43/12
release [19]  10/3 10/4 10/6 10/7
 18/19 18/21 19/3 31/10 31/17
 36/19 47/18 47/23 47/25 48/5 48/8
 48/11 48/17 50/10 52/16
released [1]  49/23
releases [1]  30/12
relevant [7]  4/14 6/3 18/1 20/2
 28/12 42/7 42/12
relocated [1]  15/3
remain [1]  50/19
remaining [1]  54/4
remarks [1]  42/14
remember [3]  28/7 40/17 40/17
remind [1]  26/13
remorse [2]  44/24 46/16
remorseful [2]  44/10 45/1
removal [5]  15/1 15/2 18/22 48/6
 50/17
remove [1]  48/15
removed [6]  15/18 15/19 48/2 48/7
 48/10 50/18
repeat [1]  46/11
repeating [1]  40/9
report [12]  3/8 4/18 5/4 5/9 5/12
 5/18 6/1 17/25 48/21 50/21 52/17
 52/20
Reporter [4]  1/22 1/23 55/4 55/14
reporting [1]  50/16
represents [2]  19/23 29/24
request [9]  3/18 3/20 3/22 4/7
 11/21 13/11 15/16 39/8 53/11
requested [1]  50/9
requesting [1]  46/2
requests [1]  39/16
require [1]  18/22
required [7]  10/13 10/17 18/1
 32/14 43/8 47/24 52/3
requirements [1]  50/17
requires [1]  6/10
residence [1]  52/19
resolve [1]  4/15
resolved [1]  4/19
respect [16]  6/14 6/18 9/17 12/20
 15/14 16/25 18/7 18/18 19/9 23/3
 28/14 31/10 37/1 42/22 43/25 53/3
responsibility [4]  29/11 30/17
 40/8 46/16
responsible [1]  52/5
rest [1]  40/18
restaurant [1]  33/10
restitution [20]  3/21 3/24 4/1
 11/9 11/12 11/14 11/21 11/25 12/3
 12/8 13/11 17/23 19/5 31/9 49/6
 49/9 49/13 49/17 49/19 50/8
result [2]  15/2 32/12
resulted [1]  6/23
resumes [1]  26/7
return [1]  50/22
review [3]  5/17 5/21 13/20
reviewed [3]  3/8 3/22 4/17
rhetorically [1]  30/7
ridiculous [1]  38/15
right [26]  2/13 2/21 4/10 9/4 9/5
 15/13 15/25 16/25 19/18 30/21
 31/6 31/21 32/15 33/14 39/18
 41/20 41/25 42/2 42/6 44/12 47/9
 52/24 53/4 53/13 54/1 54/8
role [4]  9/14 27/24 28/18 28/19
Room [1]  1/24
RPR [1]  55/13
Rule [1]  52/9
Rules [1]  52/9
run [5]  24/25 25/2 27/4 47/19

**R**

run... [1]   52/20
running [4]   23/11 27/4 28/19 28/20
runs [1]   20/4
Russia [2]   34/22 35/10
Russian [3]   20/24 34/25 35/8

**S**

sad [1]   36/12
safe [1]   41/17
said [6]   6/8 19/6 22/9 25/4 38/1 44/19
same [3]   10/9 10/10 41/7
satisfied [1]   5/14
saw [1]   36/22
say [14]   16/6 29/19 33/24 35/13 36/6 36/7 39/22 40/20 41/13 44/4 45/18 46/1 48/12 50/2
saying [3]   33/13 33/14 42/17
says [8]   11/15 20/13 20/15 32/25 32/25 33/3 33/25 35/25
scams [1]   27/22
scheme [8]   7/3 21/22 23/5 23/9 29/16 30/25 43/22 50/24
school [1]   37/23
searches [3]   51/22 51/23 52/2
second [1]   42/10
section [8]   3/7 7/19 11/8 47/13 47/22 49/7 52/23 53/14
sections [2]   3/6 6/6
security [4]   19/24 19/24 20/7 43/17
see [16]   3/25 8/4 8/7 8/12 8/21 8/24 11/1 16/17 22/22 25/8 25/13 25/17 28/25 35/11 35/12 39/12
seek [1]   19/7
seeking [9]   11/14 14/23 14/24 15/5 15/5 15/7 15/11 18/24 45/22
seem [1]   3/23
seen [6]   12/2 16/23 17/4 17/12 35/20 54/11
seized [4]   13/19 13/22 14/9 30/11
seizes [1]   52/13
sell [1]   34/12
send [2]   17/5 39/13
sending [2]   30/2 38/19
sends [1]   31/1
sense [3]   31/12 31/18 35/11
sent [2]   21/20 24/6
sentence [39]   4/3 4/16 5/1 5/3 6/7 6/11 6/12 6/17 7/14 7/15 9/17 10/13 16/1 18/3 18/6 18/8 18/14 18/24 19/6 19/7 19/13 30/9 30/18 37/2 37/14 39/8 42/4 43/23 45/21 45/22 46/3 47/10 47/11 52/19 52/25 53/1 53/3 53/15 53/21
sentenced [2]   10/9 37/3
sentences [1]   18/17
sentencing [29]   1/9 3/3 3/9 3/10 3/12 3/20 5/22 6/2 6/4 11/13 17/18 18/5 18/15 19/9 19/12 20/11 21/3 36/25 42/13 42/17 44/5 44/22 45/14 46/6 47/12 47/14 48/21 53/2 53/19
Seoul [1]   33/7
separately [1]   12/23
sequence [1]   35/12
serious [6]   30/16 33/17 38/11 42/23 43/11 43/16
seriousness [2]   18/6 43/24
serve [1]   27/7
served [1]   48/5
service [1]   26/9
services [5]   26/5 33/16 34/8 43/14 43/21
serving [1]   27/5
set [6]   5/8 5/12 6/1 17/25 18/2 30/8
sets [1]   32/1
settle [1]   33/5

seven [1]   27/10
several [1]   16/19
shall [6]   48/18 49/13 52/10 52/14 52/16 52/20
share [1]   50/11
she [32]   7/25 28/18 29/4 29/5 29/12 29/17 32/5 32/6 32/7 32/7 32/18 32/20 32/20 32/21 37/21 38/3 38/3 38/3 38/5 38/5 38/7 38/7 38/10 38/10 38/24 39/1 39/2 39/3 41/12 41/17 41/17 41/18
Sheriff [2]   3/14 3/14
Sheriff's [1]   46/18
Sherry [3]   1/22 55/4 55/13
shocked [1]   43/19
shop [1]   26/11
should [12]   7/18 9/8 11/17 11/20 12/10 13/16 18/8 21/10 29/22 31/16 45/10 49/18
show [1]   40/7
showing [2]   44/24 47/6
side [1]   38/2
sides [1]   42/20
sign [1]   12/24
significant [5]   21/15 28/19 28/23 29/24 30/3
significantly [2]   20/21 27/20
similar [3]   18/16 18/16 44/22
simply [6]   6/16 17/17 40/6 44/23 45/8 46/3
since [2]   37/5 54/11
sir [3]   2/23 12/5 40/19
sitting [1]   45/8
six [1]   27/10
skills [1]   38/17
skin [1]   36/24
Skype [1]   21/2
sleep [1]   34/10
small [1]   34/13
smart [2]   51/3 51/3
smartphones [1]   51/3
Smith [16]   14/25 15/5 15/14 15/16 15/21 15/22 16/11 16/15 16/18 16/20 17/13 17/17 31/5 37/11 37/16 46/14
snippet [2]   33/1 33/22
so [67]
social [1]   51/10
software [2]   51/14 52/3
solicit [1]   36/1
some [16]   4/1 5/22 19/11 21/16 28/14 29/24 33/16 35/5 36/25 39/1 42/13 42/21 43/13 48/3 48/8 53/6
somebody [2]   29/23 47/4
somehow [2]   25/22 53/6
someone [3]   25/14 33/3 44/4
someone's [1]   35/24
something [5]   30/9 32/1 32/2 33/3 38/22
Sometime [1]   22/14
somewhat [1]   28/5
son [1]   41/15
soon [2]   41/16 54/13
sophisticated [6]   7/5 7/6 29/13 29/17 43/6 50/23
sophistication [1]   43/9
sorry [4]   8/2 12/6 14/3 42/10
sort [4]   19/22 21/5 27/5 28/25
sought [2]   11/11 33/9
South [14]   20/17 20/21 21/23 21/24 22/3 22/4 23/4 23/12 33/7 33/18 34/8 43/16 43/19 47/1
speak [2]   7/25 44/7
speaks [2]   35/14 47/7
special [4]   10/18 17/24 47/21 49/15
specialists [1]   34/13
specific [1]   7/16
specifically [1]   19/20
specified [2]   5/2 19/6
specify [1]   49/18
specifying [1]   12/25

spent [4]   36/20 37/12 45/13 46/19
stable [1]   47/2
stand [1]   39/24
standard [3]   51/12 51/15 51/17
start [5]   5/4 5/7 22/18 34/21 42/17
started [1]   34/22
starting [2]   2/7 6/4
state [3]   2/6 44/8 48/24
statement [5]   3/11 13/12 26/13 27/14 43/2
statements [1]   18/11
STATES [44]   1/1 1/3 1/10 2/5 2/9 7/3 18/22 19/24 21/12 22/20 24/2 24/23 24/24 25/3 25/11 25/15 25/18 25/25 26/2 26/16 29/22 30/1 30/3 30/5 31/15 31/16 32/3 32/5 36/15 43/5 47/5 47/6 48/3 48/7 48/10 49/14 50/11 50/15 50/19 50/19 50/21 52/18 53/20 54/12
status [5]   15/2 17/5 36/16 37/1 50/14
statute [1]   5/2
statutes [1]   6/4
statutory [3]   6/3 6/20 53/1
staying [1]   31/15
step [4]   4/16 4/23 4/25 5/3
steps [2]   4/11 4/13
Sterns [1]   3/14
Steven [2]   1/12 2/8
still [4]   11/3 16/10 23/10 37/6
stipulated [1]   15/1
stolen [4]   21/10 27/14 27/17 29/6
stop [1]   26/10
stopped [1]   40/24
strategic [1]   46/23
Street [1]   1/14
strong [1]   46/8
strongly [3]   21/7 37/18 44/2
struggling [1]   41/19
subject [1]   31/17
submit [3]   3/20 26/7 49/2
submitted [3]   3/15 13/12 13/13
substance [2]   48/25 49/1
substantial [4]   7/2 29/9 32/20 43/23
such [1]   49/24
sufficient [1]   18/3
suggesting [1]   28/11
Suite [1]   1/17
supervised [17]   10/3 10/4 10/6 10/7 18/18 18/21 19/3 31/10 31/17 36/19 47/18 47/23 47/25 48/5 48/8 48/11 48/17
supervising [1]   27/9
supervision [3]   48/18 49/3 51/10
supervisor [1]   9/10
supplying [1]   35/10
support [5]   3/22 3/23 26/21 35/10 40/14
supported [1]   37/25
supporting [2]   35/7 45/11
sure [12]   2/17 4/11 4/13 10/22 13/18 14/5 27/6 33/12 34/15 41/17 41/18 47/8
surgery [2]   38/10 38/11
surprised [2]   20/14 33/25
surrender [1]   50/15
suspect [1]   38/1
sworn [2]   2/14 2/16
system [1]   13/10
systems [4]   25/23 51/6 51/22 52/2

**T**

tablets [1]   51/3
take [10]   8/14 13/18 14/7 14/23 14/24 18/23 20/10 38/18 40/9 42/24
taken [1]   42/5
takes [2]   15/16 48/6
taking [2]   43/14 43/20
talk [5]   5/18 5/22 17/18 40/2

**T**

talk... [1]  42/21
talked [1]  46/18
talking [4]  15/9 33/22 34/24 34/25
tax [1]  32/13
tearing [1]  45/5
tech [1]  38/19
technical [1]  38/19
technological [1]  50/23
technology [1]  38/25
tell [4]  23/25 33/14 44/10 50/4
telling [1]  32/7
tempted [1]  30/8
Tennessee [2]  24/17 26/17
term [15]  6/12 6/21 10/2 10/5 10/7 10/10 10/7 18/18 47/16 47/17 47/18 47/23 47/25 48/5 48/10
terminates [1]  48/7
termination [1]  52/22
terms [4]  21/14 27/8 52/23 53/4
terrible [2]  41/15 45/6
terribly [1]  41/2
test [1]  49/2
tests [1]  49/3
than [22]  6/24 6/24 10/2 10/4 10/6 10/8 15/5 16/5 18/4 20/10 29/3 29/14 29/16 29/17 33/5 39/12 41/8 44/17 49/17 50/2 50/3 53/1
thank [23]  3/2 4/9 9/3 9/4 11/2 11/4 11/5 13/14 15/24 16/10 19/10 39/16 39/18 39/25 40/1 40/19 40/20 40/25 41/21 41/22 50/6 54/7 54/14
Thanks [2]  38/24 39/21
that [333]
that's [17]  6/16 7/19 10/11 11/15 12/16 12/17 14/11 14/15 17/4 17/8 17/10 17/24 28/4 31/22 37/15 38/20 50/6
theft [6]  3/7 6/10 7/13 7/15 9/20 42/25
their [6]  2/6 17/7 34/12 34/15 45/20 50/16
them [20]  24/20 24/21 24/24 24/25 25/4 25/6 25/11 25/12 25/14 25/17 26/8 26/9 30/23 32/7 33/11 34/19 36/2 37/20 44/5 46/24
then [42]  4/1 4/15 4/19 4/25 5/25 9/5 9/16 9/18 10/12 11/8 11/15 11/21 12/18 12/19 12/22 13/5 13/15 14/13 14/20 14/23 15/25 17/18 17/20 17/22 19/2 19/4 22/8 22/12 22/17 25/10 25/20 25/21 25/22 25/23 26/18 32/11 35/5 35/8 43/10 45/21 46/14 47/9
there [48]  3/17 4/6 4/15 4/18 4/21 5/7 7/21 8/10 8/10 9/8 10/14 11/9 11/10 11/12 11/19 12/18 13/21 13/25 17/19 22/8 24/10 24/14 26/16 26/21 27/9 30/3 30/17 31/25 32/21 32/24 33/1 33/15 36/1 36/23 38/14 38/16 38/20 39/7 42/19 45/6 45/14 45/21 46/17 48/3 48/8 53/6 53/21 54/1
thereafter [1]  49/3
therefore [1]  49/11
these [12]  4/12 24/25 25/2 26/11 27/22 30/13 30/14 30/16 39/6 41/4 43/5 45/11
they [42]  11/19 12/3 13/6 14/1 14/6 16/5 20/5 21/10 22/1 22/2 22/8 23/10 25/5 25/9 25/10 25/13 25/20 25/25 26/1 26/3 26/7 26/9 29/1 30/25 32/11 32/12 33/2 33/4 33/9 33/10 33/21 34/14 34/18 36/2 37/24 38/1 38/13 38/18 41/6 45/19 46/23 51/24
they'll [1]  30/19
thing [3]  28/21 46/5 46/21
things [3]  30/14 34/10 51/4

think [60]
thinks [1]  43/24
third [1]  4/23
this [73]
those [12]  13/22 14/4 18/5 25/10 26/4 32/13 32/15 39/16 42/21 44/7 51/17 52/15
though [3]  25/24 31/18 33/23
thought [1]  38/5
thousands [1]  27/21
threat [3]  20/7 29/24 43/17
three [6]  10/3 10/4 26/15 26/16 43/7 48/14
three-time [1]  43/7
through [6]  4/11 4/12 13/9 36/5 41/4 42/20
throughout [2]  37/25 40/13
time [21]  2/25 5/17 10/10 16/7 17/21 37/4 37/7 37/8 37/13 39/4 40/10 40/14 43/7 43/7 43/7 43/8 46/3 46/19 48/9 48/9 54/5
times [1]  45/19
tired [1]  41/3
today [7]  3/18 4/7 15/19 40/2 40/10 40/20 46/1
today's [2]  4/10 6/2
told [3]  20/16 33/8 36/2
too [1]  38/11
took [1]  33/10
torn [1]  15/20
tortured [1]  36/12
total [3]  9/15 13/22 16/1
totally [1]  5/16
town [1]  37/14
trace [1]  29/8
traitor [1]  34/18
transcript [2]  1/9 55/5
transfer [2]  7/8 7/17
transitional [1]  15/4
translation [1]  2/22
transmitter [1]  26/9
traveling [2]  22/1 22/2
treatment [2]  52/20 52/22
trip [1]  22/6
true [4]  12/16 21/6 40/16 55/5
truly [1]  41/1
try [1]  38/21
trying [3]  35/11 35/24 47/2
two [9]  3/4 6/11 6/17 16/4 26/17 43/7 44/3 45/21 49/3
two-time [1]  43/7
two-year [3]  6/11 6/17 45/21
type [7]  21/22 27/15 30/25 36/25 39/1 42/25 44/24
types [3]  18/17 27/22 30/16
typical [1]  45/20
typically [6]  3/21 15/15 15/22 16/21 17/4 17/6

**U**

U.S [2]  1/13 1/23
U.S.C [11]  3/6 3/7 6/6 6/10 11/8 18/2 47/13 47/22 49/7 52/23 53/14
Ukraine [11]  19/25 26/19 34/21 36/15 37/21 37/22 38/13 45/3 47/6 48/2 48/13
Ukrainian [2]  24/23 25/3
unable [1]  53/10
unaltered [1]  52/4
unannounced [2]  51/21 52/1
unauthorized [3]  7/8 7/17 9/7
unavailable [1]  53/15
under [13]  2/2 6/19 8/8 9/11 9/12 16/15 44/13 45/11 45/13 46/20 47/24 47/24 52/23
underlie [1]  44/15
underlying [2]  7/12 7/16
understand [12]  2/22 13/18 15/23 22/2 24/4 28/18 31/4 37/19 40/2 40/7 40/7 45/7
understanding [5]  11/10 12/12 14/18 33/13 33/13

understands [1]  37/20
undertake [1]  37/20
ungrateful [1]  41/15
unique [3]  29/3 39/10 39/10
UNITED [44]  1/1 1/3 1/10 2/5 2/9 7/3 18/22 19/23 21/12 22/20 24/2 24/22 24/23 25/3 25/11 25/15 25/18 25/25 26/2 26/16 29/21 30/1 30/3 30/4 31/15 31/16 32/2 32/5 36/15 43/5 47/4 47/5 48/3 48/7 48/10 49/14 50/11 50/14 50/19 50/19 50/20 52/18 53/20 54/12
unlawful [3]  44/17 49/1 53/6
unlawfully [2]  7/9 48/25
unless [2]  50/19 51/7
unlikely [1]  31/14
until [6]  20/16 23/18 33/6 33/18 43/15 50/17
unwarranted [2]  18/15 46/6
up [12]  4/3 17/8 18/23 23/1 30/9 31/15 31/15 32/1 35/13 36/22 40/3 47/6
upon [4]  20/20 40/8 51/10 52/21
upset [1]  36/14
upward [1]  53/2
Upwork [1]  27/2
us [17]  6/3 20/23 23/5 25/7 25/17 27/13 29/2 29/3 29/4 29/21 29/22 32/10 32/15 36/16 50/15 51/13 51/21
use [7]  7/8 7/17 12/5 17/1 25/22 49/1 51/12
used [3]  24/18 27/2 51/22
useful [3]  34/11 34/17 38/16
user [2]  51/10 51/11
using [2]  24/17 33/16
usual [4]  12/2 15/3 16/18 16/19
usually [2]  17/4 40/21

**V**

valuable [1]  41/8
value [1]  13/22
values [1]  14/13
variance [7]  15/6 15/7 15/8 16/11 37/16 39/6 45/18
variances [2]  17/19 45/19
various [1]  13/19
vary [2]  45/25 46/14
verify [1]  52/2
versus [2]  2/5 53/20
very [13]  2/19 20/14 29/9 29/12 40/13 41/15 41/15 42/19 42/23 43/5 44/2 47/7 54/10
via [2]  24/4 25/6
victim [9]  3/11 11/11 13/6 13/10 13/10 13/12 27/14 27/18 43/2
victims [5]  7/1 11/10 13/9 43/1 43/6
view [3]  7/25 12/13 15/14
violate [1]  52/1
violation [5]  3/5 3/7 6/6 6/10 7/13
Virginia [3]  24/16 25/24 26/17
visit [2]  20/21 22/5
volumes [1]  44/7
volunteered [1]  44/4
vs [1]  1/5

**W**

wages [1]  27/21
waive [1]  49/11
waived [1]  53/7
wake [1]  35/12
want [24]  2/17 3/22 10/21 12/23 13/17 19/19 19/21 26/20 27/12 30/15 30/25 31/2 32/23 33/12 34/7 36/7 39/23 40/10 40/20 42/3 42/13 42/20 44/9 44/11
wanted [4]  16/6 24/5 33/11 40/7
wants [6]  36/5 38/21 38/21 38/21 38/23 39/5
war [5]  15/20 34/21 35/10 45/4

**W**

**war... [1]**  48/13
**war-torn [1]**  15/20
**warm [1]**  41/17
**warrant [4]**  4/22 23/22 23/23 36/25
**warranted [3]**  17/14 17/19 47/25
**warrants [1]**  48/16
**was [126]**
**washes [1]**  12/9
**Washington [4]**  1/5 1/14 1/18 1/25
**wasn't [5]**  21/6 28/20 31/23 33/24 43/18
**Wasserman [15]**  1/12 2/9 3/18 5/7 9/22 10/20 12/11 13/5 13/17 15/13 19/8 41/25 49/8 53/21 54/2
**watches [1]**  51/3
**water [2]**  41/12 41/17
**way [4]**  13/2 14/7 14/19 44/6
**ways [2]**  28/14 29/24
**we [32]**  3/3 4/3 4/3 4/13 12/19 12/24 13/8 13/9 13/11 13/13 16/10 16/21 17/18 18/23 19/15 22/9 23/10 30/4 30/11 30/15 30/16 30/22 30/22 33/21 36/17 36/18 38/12 38/19 39/12 39/13 42/9 43/2
**we'll [1]**  2/25
**weaponry [1]**  38/19
**website [4]**  21/20 25/23 30/12 32/1
**weigh [1]**  29/1
**weighs [4]**  29/10 43/23 44/2 45/14
**weighty [1]**  42/19
**well [21]**  8/17 9/2 12/11 14/18 14/19 14/23 16/3 17/23 22/21 24/1 25/5 27/3 34/2 34/10 45/21 46/7 47/7 47/7 47/13 48/19 54/9
**went [3]**  25/14 29/9 34/3
**were [44]**  5/5 13/21 16/4 20/22 20/25 21/4 21/8 21/10 21/11 22/1 22/2 22/15 23/4 23/8 23/10 24/14 24/23 25/2 25/9 25/13 25/22 25/25 26/1 26/2 26/14 26/16 26/18 27/2 27/9 27/13 29/6 29/8 32/5 32/7 32/11 32/14 33/15 33/16 34/1 43/2 43/4 43/13 44/6 46/23
**weren't [2]**  32/12 33/21
**what [49]**  8/7 8/13 12/2 15/13 16/9 16/17 16/18 18/20 21/19 21/24 22/15 22/17 23/3 23/6 23/8 24/1 24/19 27/14 28/9 29/17 29/17 29/19 30/13 32/4 32/5 32/24 32/25 33/13 35/16 35/25 36/5 37/19 38/12 38/20 40/17 41/10 44/1 44/11 44/18 44/19 45/1 45/2 45/9 46/2 46/12 47/9 49/18 49/22 49/25
**what's [2]**  13/21 38/15
**whatever [2]**  14/13 32/14
**when [24]**  7/14 7/18 12/24 17/18 20/9 22/23 23/14 23/19 31/17 32/20 32/25 34/9 34/21 34/22 34/25 35/9 35/22 36/3 36/14 36/22 36/24 43/19 46/25 53/17
**where [15]**  8/8 12/25 20/13 25/22 29/1 33/2 33/24 34/6 38/2 38/24 40/4 40/5 45/3 45/4 45/6
**Whereas [1]**  32/18
**whether [14]**  3/21 4/17 4/18 4/21 8/20 14/6 17/1 17/19 17/20 21/5 23/2 31/14 40/22 47/24
**which [47]**  3/11 3/13 3/23 5/5 6/5 6/9 6/24 9/18 14/9 14/12 15/22 16/2 17/6 19/1 19/2 19/13 19/16 21/9 21/12 21/21 23/11 23/12 26/20 28/20 31/8 34/4 35/4 36/15 37/12 40/3 40/3 40/4 40/6 40/8 43/6 44/3 45/10 45/23 46/7 46/10 46/18 47/3 48/13 48/21 49/8 51/25 52/17
**while [4]**  29/20 46/19 48/18 48/22
**who [23]**  3/4 18/16 20/24 24/5

27/18 27/25 29/2 30/8 32/7 33/16 34/9 35/16 36/7 36/22 39/22 41/11 41/11 41/14 41/19 44/5 44/16 47/4
**whole [1]**  28/20
**whom [1]**  41/5
**whose [2]**  27/13 29/6
**why [3]**  40/7 48/4 50/1
**will [27]**  4/17 5/3 5/25 10/9 12/22 14/8 14/20 15/3 15/18 15/21 18/21 31/24 40/16 40/17 41/7 42/17 45/18 46/9 47/18 48/12 48/13 49/9 50/25 51/6 51/24 52/2 52/11
**willing [2]**  34/12 34/14
**Wilson [1]**  3/14
**wire [2]**  3/5 6/6
**wish [1]**  54/8
**within [4]**  29/25 49/2 50/21 53/9
**without [3]**  46/17 50/13 53/11
**won't [2]**  27/21 38/18
**wonder [1]**  39/23
**wool [1]**  35/24
**words [1]**  40/5
**work [6]**  14/7 21/11 26/3 33/11 34/7 34/12
**worked [2]**  26/19 36/3
**workers [1]**  26/11
**working [8]**  2/18 13/18 24/15 25/25 26/14 32/11 32/12 37/22
**world [5]**  19/24 20/7 25/21 25/22 35/4
**would [55]**  2/6 3/18 3/21 3/23 4/7 4/22 4/24 8/23 9/15 9/16 12/11 12/15 16/10 16/12 16/21 19/7 19/8 19/11 19/15 19/16 21/8 23/1 25/6 25/10 25/17 25/20 25/23 26/8 29/19 30/2 30/9 31/14 31/15 31/16 32/15 33/3 34/11 35/14 35/18 36/24 36/24 37/11 37/14 38/17 38/20 39/5 39/16 39/19 39/20 41/13 45/23 49/20 51/25 54/4 54/9
**would-be [1]**  30/2
**write [1]**  34/6
**wrong [1]**  42/25
**wrote [2]**  34/9 35/19

**Y**

**yeah [15]**  4/5 9/3 10/24 15/9 15/17 20/1 20/1 20/8 20/19 22/7 24/3 26/23 28/11 28/24 29/7
**year [8]**  6/11 6/17 10/6 10/8 20/13 37/14 39/7 45/21
**years [11]**  6/7 6/15 6/21 9/18 10/3 10/5 12/2 37/10 37/12 37/15 48/14
**yeas [1]**  37/14
**yes [23]**  2/15 2/23 5/16 5/20 5/24 13/1 13/8 13/24 14/15 16/16 19/10 23/10 23/22 23/24 24/9 24/22 26/1 28/7 31/11 37/8 39/20 42/11 54/3
**yet [4]**  14/1 14/4 14/6 21/12
**you [150]**
**you're [4]**  4/11 16/14 30/4 54/12
**your [79]**

**Z**

**zero [4]**  9/13 38/13 41/13 44/14
**zero-point [2]**  9/13 44/14
**zeroing [1]**  36/13